The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR21-0041JCC |
| Plaintiff, | |
| v. | **PLEA AGREEMENT** |
| MUKUND MOHAN, | |
| Defendant. | |

The United States of America, by and through Tessa M. Gorman, Acting United States Attorney for the Western District of Washington, Andrew C. Friedman, Assistant United States Attorney for said District, Daniel S. Kahn, Acting Chief, Fraud Section, Criminal Division, United States Department of Justice, and Christopher Fenton, Trial Attorney for said Section, Defendant, MUKUND MOHAN, and Defendant's attorneys, Robert Westinghouse and Robert M. McCallum, enter into the following Plea Agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A) & (B):

1.    **Waiver of Indictment**.  Defendant, having been advised of the right to be charged by Indictment, agrees to waive that right and enter a plea of guilty to the charges brought by the United States Attorney in an Information.

Plea Agreement -1
*United States v. Mukund Mohan*, CR21-0041JCC - 1

UNITED STATES ATTORNEY
701 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

2.  **The Charges**.  Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enter pleas of guilty to the charges of Wire Fraud, in violation of Title 18, United States Code, Section 1343, and Money Laundering, in violation of Title 18, United States Code, Section 1957, contained in the Information.  By entering pleas of guilty, Defendant hereby waives all objections to the form of the charging document.  Defendant further understands that, before entering any guilty plea, Defendant will be placed under oath.  Any statement given by Defendant under oath may be used by the United States in a prosecution for perjury or false statement.

3.  **Elements of the Offenses**.  The elements of the offense of Wire Fraud to which Defendant is pleading guilty are as follows:

First, Defendant knowingly devised or participated in a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or omitted facts;

Second, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

Third, Defendant acted with the intent to defraud; that is, the intent to deceive and cheat; and

Fourth, Defendant transmitted writings, signs, signals, pictures or sounds, by means of wire, in interstate commerce to carry out or attempt to carry out an essential part of the scheme.

The elements of the offense of Money Laundering to which Defendant is pleading guilty are as follows:

First, the defendant knowingly engaged or attempted to engage in a monetary transaction;

Second, the defendant knew the transaction involved criminally derived property;

Third, the property had a value greater than $10,000;

Plea Agreement -2
*United States v. Mukund Mohan*, CR21-0041JCC - 2

UNITED STATES ATTORNEY
701 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Fourth, the property was, in fact, derived from wire fraud; and

Fifth, the transaction occurred in the United States.

4.    **The Penalties**.  Defendant understands that the statutory penalties applicable to the offense of Wire Fraud to which he is pleading guilty are as follows:  a maximum term of imprisonment of up to twenty (20) years, a fine of up to two hundred fifty thousand dollars ($250,000), a period of supervision following release from prison of up to three (3) years, and a mandatory special assessment of one hundred dollars ($100).  If a probationary sentence is imposed, the probation period can be for up to five (5) years.

Defendant understands that the statutory penalties applicable to the offense of Money Laundering to which he is pleading guilty are as follows:  a maximum term of imprisonment of up to ten (10) years, a fine of up to two hundred fifty thousand dollars ($250,000), a period of supervision following release from prison of up to three (3) years, and a mandatory special assessment of one hundred dollars ($100).  If a probationary sentence is imposed, the probation period can be for up to five (5) years.

Defendant understands that supervised release is a period of time following imprisonment during which Defendant will be subject to certain restrictive conditions and requirements.  Defendant further understands that, if supervised release is imposed and Defendant violates one or more of the conditions or requirements, Defendant could be returned to prison for all or part of the term of supervised release that was originally imposed.  This could result in Defendant serving a total term of imprisonment greater than the statutory maximum stated above.

Defendant understands that, as a part of any sentence, in addition to any term of imprisonment and/or fine that is imposed, the Court may order Defendant to pay restitution to any victim of the offense, as required by law.

Defendant further understands that the consequences of pleading guilty may include the forfeiture of certain property, either as a part of the sentence imposed by the Court or as a result of civil judicial or administrative process.

UNITED STATES ATTORNEY
701 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Defendant agrees that any monetary penalty the Court imposes, including the special assessment, fine, costs, and restitution, is due and payable immediately and further agrees to submit a completed Financial Statement of Debtor form as requested by the United States Attorney's Office.

5. **Rights Waived by Pleading Guilty.**  Defendant understands that, by pleading guilty, Defendant knowingly and voluntarily waives the following rights:

     a.     The right to plead not guilty and to persist in a plea of not guilty;

     b.     The right to a speedy and public trial before a jury of Defendant's peers;

     c.     The right to the effective assistance of counsel at trial, including, if Defendant could not afford an attorney, the right to have the Court appoint one for Defendant;

     d.     The right to be presumed innocent until guilt has been established beyond a reasonable doubt at trial;

     e.     The right to confront and cross-examine witnesses against Defendant at trial;

     f.     The right to compel or subpoena witnesses to appear on Defendant's behalf at trial;

     g.     The right to testify or to remain silent at trial, at which trial such silence could not be used against Defendant; and

     h.     The right to appeal a finding of guilt or any pretrial rulings.

6. **United States Sentencing Guidelines**.  Defendant understands and acknowledges that the Court must consider the sentencing range calculated under the United States Sentencing Guidelines, and possible departures under the Sentencing Guidelines, together with the other factors set forth in Title 18, United States Code, Section 3553(a), including:  (1) the nature and circumstances of the offense; (2) Defendant's history and characteristics; (3) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just

DocuSign Envelope ID: 5403DE92-3493-4B8A-A6F0-F7EB3997562B

punishment for the offense; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of Defendant; (6) the need to provide Defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records.  Accordingly, Defendant understands and acknowledges that:

a.      The Court will determine Defendant's Sentencing Guidelines range at the time of sentencing;

b.      After consideration of the Sentencing Guidelines and the factors in 18 U.S.C. § 3553(a), the Court may impose any sentence authorized by law, up to the maximum term authorized by law;

c.      The Court is not bound by any recommendation regarding the sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Department, or by any stipulations or agreements between the parties in this Plea Agreement; and

d.      Defendant may not withdraw a guilty plea solely because of the sentence imposed by the Court.

7.     **Ultimate Sentence**.  Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

8.     **Statement of Facts**.  The parties agree on the following facts.  Defendant admits he is guilty of the charged offense:

In March 2020, Congress enacted The Coronavirus Aid, Relief, and Economic Security ("CARES") Act to provide emergency financial assistance to Americans suffering economic harm as a result of the COVID-19 pandemic.  Among other things, the CARES Act authorized the issuance of forgivable loans to small businesses through a

Plea Agreement -5
*United States v. Mukund Mohan*, CR21-0041JCC - 5

UNITED STATES ATTORNEY
701 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

DocuSign Envelope ID: 5403DE92-3493-4B8A-A6F0-F7EB2997562B

program known as the Paycheck Protection Program ("PPP"). PPP loans were processed, and funded, by participating lenders. The loans were guaranteed by the Small Business Administration.  PPP loans were forgivable if the borrowing business spent the loan proceeds on permissible expenses (such as payroll, mortgage payments, rent, and utilities) within a designated period, and used a certain percentage on payroll, specifically.

To qualify for a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business.  That application required the authorized representative to make certain affirmative certifications, including representing the number of employees the business had and the business' average monthly payroll expenses.  Applicants for PPP loans also were required to provide documentation showing their payroll expenses.  The figures, and the accompanying documentation, were used to determine whether a business was eligible for a PPP loan, and, if so, the size of such loan.

Between April 26, 2020, and June 2, 2020, Defendant, Mukund Mohan, submitted fraudulent applications for eight PPP loans for five different businesses.  The loans were:

| Business | Amount Sought | Lender | Result of Application |
|---|---|---|---|
| Zuput, Inc. ("Zuput") | $150,000 | Bank of America ("BofA") | Approved |
| Zuput | $223,727 | Endeavor Bank ("Endeavor") | Canceled |
| Zigantic, LLC ("Zigantic") | $304,830 | Endeavor | Approved |
| GitGrow, Inc. ("GitGrow") | $506,277 | Endeavor | Approved |
| Vangal, Inc. ("Vangal") | $1,728,398 | Endeavor | Withdrawn |
| Expect Success, Inc. | $1,794,700 | Neighborhood National Bank ("NNB") | Canceled |

| | | | |
|---|---|---|---|
| ("Expect Success") | | | |
| Expect Success | $394,000 | Live Oak Banking ("Live Oak") | Approved |
| Mahenjo, Inc. ("Mahenjo") | $431,250 | Peoples Bank ("Peoples") | Approved |

In applying for these loans, Mohan represented that each of these companies was in operation on February 15, 2020, and that each had employees to whom it paid salaries or independent contractors whom it paid for work performed for the company. Those representations were false. None of the companies had any employees to whom it paid salaries or independent contractors (other, perhaps, than Mohan and/or other members of his immediate family) as of February 15, 2020.

In submitting all but the Zuput application to Endeavor, Mohan provided copies to the lenders of a supposed IRS Forms 940 for the relevant business. These forms showed that the applying business had paid large amounts, typically more than $1,000,000, to employees in 2019. These forms were fraudulent. Mohan created them for purposes of supporting the PPP applications. None actually had been filed with the IRS (and the amounts of the tax deposits reported on the forms had not been paid to the IRS). Mohan also submitted supposed payroll reports for the relevant business. These forms typically listed dozens of supposed employees. These payroll reports also were fraudulent, and listed persons who were not employees of the business.

On May 22, 2020, Mohan purchased Mahenjo from Wyoming Corporate Services, Inc. ("WCS"), a company in the business of selling corporations. Mahenjo originally was incorporated in 2017, but it had neither employees nor business activities from 2018, when WCS acquired it, until May 22, 2020, when WCS sold it to Mohan. Rather, it was what is called a "shelf corporation."

Plea Agreement -7
*United States v. Mukund Mohan*, CR21-0041JCC - 7

UNITED STATES ATTORNEY
701 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

On June 3, Mohan filed an application with Peoples for a PPP loan for Mahenjo in the amount of $431,250. As he had done with earlier PPP applications for other companies, Mohan certified that Mahenjo was in operation on February 15, 2020, and had employees to whom it paid salaries and payroll taxes or that it paid independent contractors. Mohan also represented that he was not the owner of any other business and did not manage any other business. These representations were false, since Mahenjo had no employees or contractors on February 15, 2020, and since Mohan did own and/or manage other businesses (identified above, which had obtained more than $1 million in PPP loans).

As he had done in earlier PPP applications for other companies, Mohan submitted fraudulent documents in support of his application. Thus, Mohan submitted a purported IRS Form 940 for 2019 that represented that Mahenjo had paid $2,376,500 to its employees in 2019 (which it had not, and which form had not been filed with the IRS). Mohan submitted two purported payroll reports for February 2020, that listed 24 persons supposedly employed by Mahenjo (which they were not). And, Mohan submitted an altered version of Mahenjo's incorporation documents that purported to show that Mohan had been made Mahenjo's initial director in 2017 (which he was not).

Based on the Mahenjo application, Peoples paid $431,250 of loan proceeds to Mahenjo's account ending in 9159 at JP Morgan Chase ("JPMC"). The process of issuing this payment caused an interstate wire from the State of Washington to the State of California as part of the Fedwire transfer of funds to that account. The total amount of the eight loans for which Mohan applied was $5,533,182. The total amount of PPP loan proceeds that Mohan received from the five PPP loans that were approved was $1,786,357. After receiving PPP loan proceeds, Mohan engaged in transactions, including those listed in the table below, among others, involving proceeds of the loans. In July 2020, the United States obtained seizure warrants and seized the amounts listed in the table below:

Plea Agreement -8
*United States v. Mukund Mohan*, CR21-0041JCC - 8

UNITED STATES ATTORNEY
701 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Business | Loan | Amount Seized |
|---|---|---|
| Zuput | ■ $150,000 paid into Zuput account ending in 6319 at BofA<br><br>■ $5,500 subsequently transferred from there to Vangal's account ending in 0798 at Azlo | ■ $129,295.46 from BofA<br><br>■ $4,500 from Azlo |
| Zigantic | ■ $304,830 paid into Zigantic account ending in 3419 at Azlo<br><br>■ $231,471 subsequently transferred from there to Mohan's account ending in 4609 at Robinhood in five transactions, including a wire transfer of $50,000 on May 26, 2020 | ■ $73,262.38 from Azlo<br><br>■ $231,471 from Robinhood |
| GitGrow | ■ $506,277 paid into GitGrow account ending in 9773 at JPMC | ■ $506,277 from JPMC |
| Expect Success | ■ $394,000 paid into Expect Success account ending in 8877 at JPMC | ■ $394,000 from JPMC |
| Mahenjo | ■ $431,250 paid into Mahenjo account ending in 9159 at JPMC | ■ $431,250 from JPMC |

Only $16,301.16 of the total loan proceeds received by Mohan were ever used by him. The balance of the proceeds remained untouched in the bank accounts into which they initially were deposited, or to which they were transferred by Mohan, until seized by the government. Defendant has subsequently paid $16,301.16 to the Clerk of Court, thereby ensuring that all the loan proceeds have been either seized or returned to the United States.

Plea Agreement -9
*United States v. Mukund Mohan*, CR21-0041JCC - 9

UNITED STATES ATTORNEY
701 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The parties agree that the Court may consider additional facts contained in the Presentence Report (subject to standard objections by the parties) and/or that may be presented by the United States or Defendant at the time of sentencing, and that the factual statement contained herein is not intended to limit the facts that the parties may present to the Court at the time of sentencing.

9.   **Sentencing Factors**.  The parties agree that the following Sentencing Guidelines provisions apply to this case:

    a.    Defendant's offense is governed by § 2B1.1 of the Sentencing Guidelines;

    b.    Defendant's base offense level is 7, pursuant to § 2B1.1(a)(1), because Defendant is pleading guilty to wire fraud, which is referenced to § 2B1.1 and has a statutory maximum of 20 years;

    c.    Defendant's offense level is increased by 16 levels pursuant to § 2B1.1(b)(1)(I), because the loss exceeded $1,500,000, but did not exceed $3,500,000, after excluding the amount of the smaller of the two loan amounts for Zuput and Expect Success, for each of which Defendant submitted two loan applications, and also the amount of the loan for which he withdrew his application for Vangal;

    d.    Defendant's offense level is increased by 2 levels, pursuant to § 2B1.1(b)(10), because the offense involved sophisticated means;

    e.    Defendant's offense level is increased by 1 level, pursuant to § 2S1.1(b)(2)(A), because Defendant is pleading guilty to money laundering in violation of 18 U.S.C. § 1957.

    f.    As a result, Defendant's total offense level, prior to any adjustment for acceptance of responsibility, is 26.

Defendant understands, that at the time of sentencing, the Court is free to reject these stipulated adjustments, and is further free to apply additional downward or upward adjustments in determining Defendant's Sentencing Guidelines range.

Plea Agreement -10
*United States v. Mukund Mohan*, CR21-0041JCC - 10

UNITED STATES ATTORNEY
701 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

10.  **Acceptance of Responsibility.**  At sentencing, *if* the Court concludes Defendant qualifies for a downward adjustment for acceptance of responsibility pursuant to USSG § 3E1.1(a) and Defendant's offense level is 16 or greater, the United States will make the motion necessary to permit the Court to decrease the total offense level by three (3) levels pursuant to USSG §§ 3E1.1(a) and (b), because Defendant has assisted the United States by timely notifying the United States of Defendant's intention to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

11.  **Sentencing Recommendation.**  The United States agrees that it will recommend a term of imprisonment that is no higher than the low end of Defendant's sentencing range under the Sentencing Guidelines.  The parties agree that they each will recommend that the Court impose a fine of $100,000.   Defendant understands that these recommendations are not binding on the Court and the Court may reject the recommendations and may impose any term of imprisonment, and fine, up to the statutory maximum penalties authorized by law.   Defendant further understands that Defendant cannot withdraw his guilty pleas simply because of the sentence imposed by the Court.   Defendant shall be free to recommend any sentence, consistent with the law, that Defendant believes is appropriate in addition to the stipulated fine.  Except as otherwise provided in this Plea Agreement, the parties are free to present arguments regarding any other aspect of sentencing.

12.  **Restitution.**  Defendant agrees that he will pay restitution to Bank of America in the amount of $150,000, to Endeavor Bank in the amount of $811,107, to Live Oak Banking in the amount of $394,000, and to Peoples Bank in the amount of $431,250, for a total restitution obligation of $1,786,351.  (Defendant shall pay these amounts to the Small Business Administration (SBA) instead of the named bank(s) in the event the SBA has paid the amounts to the bank(s) prior to Defendant's payment of restitution.)  Defendant has already paid $16,301.16 to the Clerk of Court, representing

1    the balance of the loan proceeds he retained, after the seizure of funds in this case, and

2    will receive credit for this amount.

3         The full amount of restitution shall be due and payable immediately on entry of

4    judgment and shall be paid as quickly as possible.  If the Court finds that Defendant is

5    unable to make immediate restitution in full and sets a payment schedule as contemplated

6    in 18 U.S.C. § 3664(f), Defendant agrees that the Court's schedule represents a minimum

7    payment obligation and does not preclude the U.S. Attorney's Office from pursuing any

8    other means by which to satisfy Defendant's full and immediately-enforceable financial

9    obligation, including, but not limited to, by pursuing assets that come to light only after

10   the district court finds that Defendant is unable to make immediate restitution.

11        Defendant represents that Defendant has not dissipated or transferred any assets,

12   or title to any assets, including real property, since the date that Defendant was charged in

13   this case, other than (1) to make routine payments of regularly-occurring bills, including

14   mortgage payments and payments of normal living expenses, or (2) to pay legal fees

15   resulting from this case.  Defendant agrees that Defendant will not dissipate or transfer

16   assets, or title to any assets, except for those purposes, until 30 days after a decision by

17   the Department of Justice, Money Laundering and Asset Recovery Section ("MLARS")

18   on a restoration request in this case.  Nothing in this Plea Agreement shall excuse

19   Defendant from the application of the fraudulent transfer provisions contained in 28

20   U.S.C. §§ 3301-3308.  The United States agrees that it will not pursue any means to

21   satisfy Defendant's restitution obligation until after a decision by MLARS on a

22   restoration request in this case.  After that date, the United States will pursue such actions

23   only to satisfy any portion of Defendant's restitution obligation that has not been satisfied

24   by the restoration of forfeited funds and remains unpaid.

25        Defendant agrees to disclose all assets in which Defendant has any interest or over

26   which Defendant exercises control, directly or indirectly, including those held by a

27   spouse, nominee, or third party.  Defendant agrees to cooperate fully with the United

28   States' investigation identifying all property in which Defendant has an interest and with

Plea Agreement -12
*United States v. Mukund Mohan*, CR21-0041JCC - 12

UNITED STATES ATTORNEY
701 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  the United States' lawful efforts to enforce prompt payment of the financial obligations to

2  be imposed in connection with this prosecution.  Defendant's cooperation obligations are:

3  (1) before sentencing, and no more than 30 days after executing this Plea Agreement,

4  truthfully and completely executing a Financial Disclosure Statement provided by the

5  United States Attorney's Office and signed under penalty of perjury regarding

6  Defendant's and Defendant's spouse's financial circumstances and producing supporting

7  documentation, including tax returns, as requested; (2) providing updates with any

8  material changes in circumstances, as described in 18 U.S.C. § 3664(k), within seven

9  days of the event giving rise to the changed circumstances; (3) authorizing the United

10  States Attorney's Office to obtain Defendant's credit report before sentencing;

11  (4) providing waivers, consents or releases requested by the U.S. Attorney's Office to

12  access records to verify the financial information; (5) authorizing the U.S. Attorney's

13  Office to inspect and copy all financial documents and information held by the U.S.

14  Probation Office; (6) submitting to an interview regarding Defendant's Financial

15  Statement and supporting documents before sentencing (if requested by the United States

16  Attorney's Office), and fully and truthfully answering questions during such interview;

17  and (7) notifying the United States Attorney's Office before transferring any interest in

18  property owned directly or indirectly by Defendant, including any interest held or owned

19  in any other name, including all forms of business entities and trusts.

20  The parties acknowledge that voluntary payment of restitution prior to the

21  adjudication of guilt is a factor the Court considers in determining whether Defendant

22  qualifies for acceptance of responsibility pursuant to USSG § 3E1.1(a).  In addition, in

23  any event, the government will consider Defendant's cooperation regarding restitution in

24  making its sentencing recommendation.

25  13.  **Forfeiture.** The Defendant understands that the forfeiture of property is

26  part of the sentence that must be imposed in this case. The Defendant agrees to forfeit

27  to the United States immediately his right, title, and interest in all property that

28  constitutes or is traceable to proceeds of his commission of Wire Fraud. All such

Plea Agreement -13
*United States v. Mukund Mohan*, CR21-0041JCC - 13

property is forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), by way of Title 21, United States Code, Section 2461(c), and includes but is not limited to:

    a. $4,500 in U.S. funds seized on July 23, 2020 from Azlo account ending in 0798, held in the name of Vangal, Inc.;

    b. $73,262.38 in U.S. funds seized on July 23, 2020 from Azlo account ending in 3419, held in the name of Zigantic, LLC;

    c. $129,295.46 in U.S. funds seized on July 30, 2020 from Bank of America account ending in 6319, held in the name of Zuput, Inc.;

    d. $394,000 in U.S. funds seized on July 24, 2020 from Chase Bank account ending in 8877, held in the name of Expect Success, Inc.;

    e. $431,250 in U.S. funds seized on July 24, 2020 from Chase Bank account ending in 9159, held in the name of Mahenjo, Inc.;

    f. $506,277 in U.S. funds seized on July 24, 2020 from Chase Bank account ending in 9773, held in the name of Gitgrow, Inc.; and

    g. $231,471 in U.S. funds seized on July 23, 2020 from Robinhood account ending in 4609, held in the name of Mukund Mohan.

The Defendant also agrees to forfeit to the United States immediately his right, title, and interest in all property involved in his commission of Money Laundering. All such property is forfeitable pursuant to Title 18, United States Code, Section 982(a)(1).

The Defendant agrees to fully assist the United States in the forfeiture of any forfeitable property and to take whatever steps are necessary to pass clear title to the United States, including but not limited to: surrendering title and executing any documents necessary to effect forfeiture; assisting in bringing any property located outside the United States within the jurisdiction of the United States; and taking whatever steps are necessary to ensure that property subject to forfeiture is not sold, disbursed, wasted, hidden, or otherwise made unavailable for forfeiture. The Defendant agrees not to file a claim to any of this property in any federal forfeiture proceeding, administrative

Plea Agreement -14
*United States v. Mukund Mohan*, CR21-0041JCC - 14

UNITED STATES ATTORNEY
701 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    or judicial, that may be or has been initiated, or to otherwise contest any federal forfeiture

2    proceeding that may be or has been initiated. The Defendant also agrees he will not assist

3    any party who may file a claim to this property in any federal forfeiture proceeding.

4         The United States reserves its right to proceed against any remaining property not

5    identified in this Plea Agreement, including any property in which the Defendant has any

6    interest or control, if that property constitutes or is traceable to proceeds of his

7    commission of Wire Fraud or was involved in his commission of Money Laundering.

8         The Defendant understands and acknowledges that the forfeitures identified in

9    subsections a through g of this Section 13 reflect a criminal penalty that is separate and

10   distinct from the restitution that is ordered in this case for victim losses. The United

11   States agrees, however, that it will request the Attorney General apply, through

12   restoration, the net proceeds from the identified forfeitures to any unsatisfied balance of

13   the restitution that is ordered.

14        14.   **Non-Prosecution of Additional Offenses**.  As part of this Plea Agreement,

15   the United States Attorney's Office for the Western District of Washington agrees not

16   to prosecute Defendant for any additional offenses known to it as of the time of this

17   Plea Agreement based upon evidence in its possession at this time, and that arise out of

18   the conduct giving rise to this investigation.  In this regard, Defendant recognizes the

19   United States has agreed not to prosecute all of the criminal charges the evidence

20   establishes were committed by Defendant solely because of the promises made by

21   Defendant in this Plea Agreement.  Defendant agrees, however, that, for purposes of

22   preparing the Presentence Report, the United States Attorney's Office will provide the

23   United States Probation Office with evidence of all conduct committed by Defendant.

24        Defendant agrees that any charges to be dismissed before or at the time of

25   sentencing were substantially justified in light of the evidence available to the United

26   States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant

27   with a basis for any future claims under the "Hyde Amendment," Pub. L. No. 105-119

28   (1997).

Plea Agreement -15
*United States v. Mukund Mohan*, CR21-0041JCC - 15

UNITED STATES ATTORNEY
701 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

15. **Breach, Waiver, and Post-Plea Conduct.**  Defendant agrees that, if Defendant breaches this Plea Agreement, the United States may withdraw from this Plea Agreement and Defendant may be prosecuted for all offenses for which the United States has evidence.  Defendant agrees not to oppose any steps taken by the United States to nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea Agreement.  Defendant also agrees that, if Defendant is in breach of this Plea Agreement, Defendant has waived any objection to the re-institution of any charges that previously were dismissed or any additional charges that had not been prosecuted.

Defendant further understands that if, after the date of this Agreement, Defendant should engage in illegal conduct, or conduct that violates any conditions of release or the conditions of confinement (examples of which include, but are not limited to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the Pretrial Services Officer, Probation Officer, or Court), the United States is free under this Plea Agreement to file additional charges against Defendant or to seek a sentence that takes such conduct into consideration by requesting the Court to apply additional adjustments or enhancements in its Sentencing Guidelines calculations in order to increase the applicable advisory Guidelines range, and/or by seeking an upward departure or variance from the calculated advisory Guidelines range.  Under these circumstances, the United States is free to seek such adjustments, enhancements, departures, and/or variances even if otherwise precluded by the terms of the Plea Agreement.

16. **Waiver of Appellate Rights and Rights to Collateral Attacks.** Defendant acknowledges that, by entering the guilty pleas required by this Plea Agreement, Defendant waives all rights to appeal from Defendant's convictions and any pretrial rulings of the Court.  Defendant further agrees that, provided the Court imposes a custodial sentence that is within or below the Sentencing Guidelines range (or the statutory mandatory minimum, if greater than the Guidelines range) as

determined by the Court at the time of sentencing, Defendant waives to the full extent of the law:

a.   Any right conferred by Title 18, United States Code, Section 3742, to challenge, on direct appeal, the sentence imposed by the Court, including any fine, restitution order, probation or supervised release conditions, or forfeiture order (if applicable); and

b.   Any right to bring a collateral attack against his convictions and sentence, including any restitution order imposed, except as it may relate to the effectiveness of legal representation.

This waiver does not preclude Defendant from bringing an appropriate motion pursuant to 28 U.S.C. § 2241, to address the conditions of Defendant's confinement or the decisions of the Bureau of Prisons regarding the execution of Defendant's sentence.

If Defendant breaches this Plea Agreement at any time by appealing or collaterally attacking (except as to effectiveness of legal representation) the convictions or sentence in any way, the United States may prosecute Defendant for any counts, including those with mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea Agreement.

17.   **Voluntariness of Plea**.  Defendant agrees that Defendant has entered into this Plea Agreement freely and voluntarily, and that no threats or promises were made to induce Defendant to enter pleas of guilty other than the promises contained in this Plea Agreement or set forth on the record at the change of plea hearing in this matter.

18.   **Statute of Limitations**.  In the event this Plea Agreement is not accepted by the Court for any reason, or Defendant breaches any of the terms of this Plea Agreement, the statute of limitations shall be deemed to have been tolled from the date of the Plea Agreement to:  (1) thirty (30) days following the date of non-acceptance of the Plea Agreement by the Court; or (2) thirty (30) days following the date on which a breach of the Plea Agreement by Defendant is discovered by the United States Attorney's Office.

Plea Agreement -17
*United States v. Mukund Mohan*, CR21-0041JCC - 17

UNITED STATES ATTORNEY
701 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    19.   **Completeness of Agreement**.  The United States and Defendant

2    acknowledge that these terms constitute the entire Plea Agreement between the parties,

3    except as may be set forth on the record at the change of plea hearing in this matter.

4    This Plea Agreement binds only the United States Attorney's Office for the Western

5    District of Washington and the Fraud Section of the Criminal Division of the United

6    States Department of Justice.  It does not bind any other United States Attorney's

7    Office or any other office or agency of the United States, or any state or local

8    prosecutor.

9    DATED:  this 15th day of March, 2021.

10

11   *Mukund Mohan*
     4CF18EE12F924B5...

12   MUKUND MOHAN
     Defendant

13

14

15   *s/Robert Westinghouse*

16   ROBERT WESTINGHOUSE
     Attorney for Defendant

17

18   *s/Robert M. McCallum*

19   ROBERT M. McCALLUM
     Attorney for Defendant

20

21   *s/Andrew C. Friedman*

22   ANDREW C. FRIEDMAN
     Assistant United States Attorney

23

24

25   *s/Christopher Fenton*

26   CHRISTOPHER FENTON
     Trial Attorney

27   Fraud Section, Criminal Division
     Department of Justice

28

Plea Agreement -18
*United States v. Mukund Mohan*, CR21-0041JCC - 18

UNITED STATES ATTORNEY
701 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970