The Honorable John C. Coughenour

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10  UNITED STATES OF AMERICA,

11                      Plaintiff,

12        v.

13  MUKUND MOHAN,

14                      Defendant.

No. 2:21-cr-00041-JCC

**MUKUND MOHAN'S**
**SENTENCING MEMORANDUM**

15
16
17
18
19
20
21
22
23
24
25
26

SENTENCING MEMORANDUM
No. 2:21-cr-00041-JCC



501 East Pine Street, Suite 201
Seattle, Washington 98122
phone 206.516.3800   fax 206.516.3888

1

# TABLE OF CONTENTS

2
I.     INTRODUCTION .................................................................... 1

3
II.    CASE OVERVIEW AND PROCEDURAL HISTORY ...................... 4

4

5
III.   THE SENTENCING GUIDELINES OVERSTATE THE
       SERIOUSNESS OF THESE OFFENSES ........................................ 6

6

7
IV.    THE CRIMINAL CONDUCT IS ENTIRELY OUT OF
       CHARACTER FOR THE DEFENDANT ......................................... 9

8
       A.    Mr. Mohan's Upbringing and Educational Background......... 9

9
       B.    Mr. Mohan's Marriage and Family Life. ............................. 10

10

11
       C.    Mr. Mohan's Professional Life. ......................................... 12

12
       D.    Mr. Mohan's Character – Devotion to Family;
             Generosity to Friends and Business Associates; and,
13
             a Lack of Self-Worth. ................................................... 14

14
V.     A SENTENCE OF SIXTY DAYS IMPRISONMENT
       AVOIDS SENTENCING DISPARITY ........................................ 18
15

16
VI.    A SENTENCE OF SIXTY DAYS IMPRISONMENT
       ADDRESSES THE NEED FOR BOTH GENERAL AND
17
       SPECIFIC DETERRENCE ........................................................ 28

18
VII.   WHEN VIEWED HOLISTICALLY, A SENTENCE OF
19
       SIXTY-DAYS IMPRISONMENT COUPLED WITH A
       THREE-YEAR TERM OF SUPERVISED RELEASE AND A
20
       $100,000 FINE IS SUFFICIENT, BUT NOT GREATER
21
       THAN REQUIRED TO PUNISH MR. MOHAN ........................... 32

22
VIII.  CONCLUSION ..................................................................... 34

23

24

25

26

Yarmuth LLP

501 East Pine Street, Suite 201
Seattle, Washington 98122
phone 206.516.3800   fax 206.516.3888

# I.   INTRODUCTION

Defendant Mukund Mohan respectfully submits this Sentencing Memorandum to assist the Court in determining an appropriate sentence.  For the reasons set forth below, we believe that Mr. Mohan should be sentenced to a sixty-day term of imprisonment to be followed by a three-year term of Supervised Release.

Mr. Mohan has agreed to the forfeiture of all the loan proceeds seized by the government on July 23, 2020, the date when it executed a search warrant at his residence.  The aggregate of all seized funds is $1,770,055.80.  Mr. Mohan has also agreed to the entry of an order of restitution for $1,786,357, the total of all loan proceeds Mr. Mohan received.  He has already paid the difference – $16,301.16 – into the Registry of the Clerk of the Court to fully complete the anticipated restitution obligation and ensure that all banks are fully repaid.  Finally, Mr. Mohan has agreed to recommend and pay a stipulated fine of $100,000.[1]

---

[1] The $100,000 fine is the consequence of Mr. Mohan facing the very real prospect that some or all of the forfeited funds might not be restored to the victim lenders by the government, thereby necessitating the separate payment of a potentially staggering amount of restitution.  This phenomenon, sometimes dubbed the "double whammy," is somewhat surprisingly authorized by law.  *See, e.g., United States v. Newman,* 659 F.3d 1235, 1241-43 (9th Cir. 2011) (because forfeiture and restitution serve different purposes – one for punishment, the other to make the victim whole – defendant must pay both; district court may not reduce forfeiture because of an order of restitution to a victim or because the victim already has been made whole); *abrogation recognized by United States v. Chow,* 772 F. App'x. 429 (9th Cir. 2019), *United States v. Baras,* 624 F. App'x. 560 (9th Cir. 2015) (same); *United States v. Gonzalez-Torres,* 656 F.App'x. 844 (9th Cir. 2016) (the Attorney General, not courts, has the authority to transfer forfeited funds to compensate victims, *i.e.,* to restore forfeited funds).  The Attorney General has delegated his authority to the Chief of the Money Laundering and Asset Recovery Section ("MLARS") of the Department of Justice.  28 C.F.R. § 9.1(b)(2). (*cont. next page*)

**Yarmuth** LLP

501 East Pine Street, Suite 201
Seattle, Washington 98122
phone 206.516.3800   fax 206.516.3888

1    We believe that this recommended sentence is appropriate for a

2    number of reasons.  First, the conduct that is at the center of this

3    prosecution and related missteps during the same period were episodic in

4    nature, occurred in the midst of the pandemic, and contrast sharply with

5    the defendant's otherwise unblemished professional and familial

6    reputation.  Clearly, for approximately two months beginning in late

7    April 2020, Mr. Mohan's conduct was irresponsible and misguided.  He

8    seriously abused an important pandemic relief program and he exhibited

9    callous disregard for the truth, business ethics, and his own professional

10   integrity.  His conduct cannot be called aberrational because his

11   wrongdoing required thought and planning and because he repeated it

12   multiple times.  Nevertheless, as family members, business associates,

13   and friends uniformly attest in their letters of support, such conduct was

14   shockingly at odds with the immensely talented, intelligent, and selfless

15   man they knew before the late Spring 2020 and with the man they are

16   convinced Mr. Mohan is today.

17   Second, our recommended sentence is the sentence imposed in

18   *United States v. Zhang,* 2:20-cr-00169-RAJ (W.D. Wash.), which we

19   believe to be factually identical in all material aspects.  Nationally, we

20

(*cont. from previous page*)

21   Although there appear to be few instances nationwide when MLARS has actually
     exercised this authority and declined to restore forfeited funds to a victim – indeed, we

22   have been unable to identify any other PPP loan fraud case, of the eighty or more such
     cases prosecuted outside this District, in which there is any mention of this forfeiture/

23   restoration issue – this United States Attorney's office lacks the authority to firmly
     commit to restoration of all forfeited funds.  To provide some greater certainty, we

24   sought an advisory opinion from MLARS.  That opinion assured Mr. Mohan of full
     restoration if there was no material change in his financial situation and if the Court

25   imposed, and he paid, a $100,000 fine.  Thus, he stipulated to the $100,000 fine to
     avoid the double whammy of having to pay a large portion or all the $1,786 Million in

26   anticipated restitution, an obligation that would have caused dire financial
     consequences for him and his family.

SENTENCING MEMORANDUM
No. 2:21-cr-00041-JCC – Page 2

**Yarmuth** LLP

501 East Pine Street, Suite 201
Seattle, Washington 98122
phone 206.516.3800   fax 206.516.3888

1   believe that our recommended sentence is reasonable when compared to

2   the more aggravated, but factually similar case of *United States v.*

3   *Jaafar,* 1:20-cr-185-CMH (EDVA, 2020).  More generally, dissimilar facts

4   in other PPP loan fraud cases which have been sentenced render them of

5   little value in structuring the sentence for Mr. Mohan.

6          Third, our recommended sentence addresses both the need for

7   specific deterrence of Mr. Mohan and the general deterrence of others.

8   Regarding specific deterrence, we believe that Mr. Mohan has already

9   taken the requisite steps to ensure that he will never re-offend.  These

10  steps include (1) stopping his wrongdoing voluntarily almost two months

11  before he was contacted by law enforcement; (2) expressing his heartfelt

12  remorse and contriteness to the Court and to his family, friends, and

13  business associates; and (3) beginning mental health counseling on his

14  own accord shortly after the initiation of criminal proceedings and

15  continuing this counseling with Lonnie Kaman, a mental health

16  counselor experienced in working with those who have been charged with

17  crimes.  As for general deterrence, we submit that a sixty-day term of

18  imprisonment, especially when coupled with Mr. Mohan's downfall from

19  corporate executive to unemployed felon, will deter all but the most

20  hardened deviants from committing a similar offense.

21         Fourth, when viewed holistically, the sentence of sixty days

22  imprisonment, a three-year term of supervised release with special

23  conditions for continued mental health counseling, financial monitoring,

24  and community service, a $100,000 fine, and the possibility that he will

25  be held responsible for all or a portion of the anticipated restitution order

26  is sufficient but not greater than required to punish Mr. Mohan for his

**Yarmuth** LLP

501 East Pine Street, Suite 201
Seattle, Washington 98122
phone 206.516.3800   fax 206.516.3888

wrongdoing.  In succeeding paragraphs, we address each of these reasons in greater detail.

## II.     CASE OVERVIEW AND PROCEDURAL HISTORY

Mr. Mohan was charged in a two-count Information with a wire fraud offense in violation of 18 USC § 1343 and a money laundering offense in violation of 18 USC § 1957(a).  The essence of the wire fraud offense is not in dispute.  During an approximate one-month period beginning in late April and continuing into early June 2020, Mr. Mohan applied for a series of eight Payroll Protection Program ("PPP") loans under the CARES Act.  This legislation was enacted in the early months of the COVID-19 pandemic to provide relief to businesses experiencing financial hardship.[2]  Mr. Mohan applied for these loans in the names of various startup businesses that he had either created in the past or acquired as "shelf corporations" through which he generally intended to develop high-tech business concepts.  At the time he submitted the loan applications, however, the businesses were little more than concepts in his mind; none satisfied the prerequisites for PPP loans as on-going businesses with significant revenue and payroll expenses.  The loan applications were supported by false payroll records and employment tax returns.

Two of the eight applications were duplicates and one, for an entity called Vangal, was withdrawn.  The first loan was funded by Bank of

---

[2] PPP loans allow qualifying small businesses and other organizations to receive loans with a maturity of two years and an interest rate of 1%.  PPP loans must be used by businesses on payroll costs, interest on mortgages, rent, and utilities.  The program is designed such that the principal and interest on such loans is forgiven if the business spends the loan proceeds on the designated expense items within a specific period of time and uses at least a certain percentage of the loan proceeds on payroll expenses.

Yarmuth LLP

501 East Pine Street, Suite 201
Seattle, Washington 98122
phone 206.516.3800   fax 206.516.3888

America in the name of a startup business called Zuput on May 1, 2020. Additional loans were extended to four other entities, all created and administered by Mr. Mohan.  What is particularly striking about this conduct, however, and generally sets it apart from most fraud cases, and especially from other PPP loan fraud cases, is that Mr. Mohan had no plan for what to do with the loan proceeds which he received.  Indeed, he had never sought legitimate funding for any of these entrepreneurial pursuits.[3]  In short, his conduct was simply irrational.

Almost all the loan proceeds simply sat in accounts in which they were deposited until, some two months later, the government seized them.  There was no frivolous spending on luxury items and no funding of a drug or gambling addiction.  More importantly, there was no loss to the public or the lenders.  Mr. Mohan's behavior is indicative of twisted or distorted thinking and possibly underlying mental health concerns, but not greed or avarice.  He was not attempting to enrich himself.

Regrettably, although Mr. Mohan stopped applying for more loans as abruptly as he had started this activity about one month earlier, he did not return the funds.  Rather, it appears that Mr. Mohan was simply frozen in space not knowing how to extricate himself from his self-inflicted mess.  This stupor was broken approximately two months later when law enforcement knocked on his door.  Mr. Mohan promptly fainted.

---

[3] Ironically, Probation asserts that Mr. Mohan's lack of use of the ill-gotten gain is somehow an aggravating circumstance.  We respectfully disagree.  Although there is no question that Mr. Mohan's actions in applying for these loans which were intended to help struggling businesses keep the doors open were reprehensible, we question how his criminal conduct is made worse because he preserved the funds.  It was this non-use that preserved the funds so that they were available for the government to seize and eventually restore to the public trust.

SENTENCING MEMORANDUM
No. 2:21-cr-00041-JCC – Page 5

Yarmuth LLP

501 East Pine Street, Suite 201
Seattle, Washington 98122
phone 206.516.3800   fax 206.516.3888

The money laundering offense is based on Mr. Mohan's transfer of approximately $231,000 of the loan proceeds from a business account in the name of the borrowing entity to an account held by Mr. Mohan. More than two months after most of these funds were transferred, however, this money also remained untouched. These funds were intact when seized by the government in late July, and again, there was no loss.

In the approximately two months he had possession of the loan proceeds, Mr. Mohan spent less than one percent of the total he had been lent. Notably, when the government intervened and seized the remaining funds, the total deficit amounted to a little over $16,000.[4]

On March 10, 2021, Mr. Mohan entered pleas of guilty to the charged offenses pursuant to the terms of a Plea Agreement. Sentencing is set for July 20, 2021, at 9:00 a.m. Significantly, Mr. Mohan has cooperated with the government in its prosecution of him from day one, making clear from the outset that he did not wish to contest the charges.

## III.   THE SENTENCING GUIDELINES OVERSTATE THE SERIOUSNESS OF THESE OFFENSES

While once mandatory, the Sentencing Guidelines are now strictly advisory and are entitled to no presumptive weight over other legitimate sentencing factors. *United States v. Booker,* 543 U.S. 220, 224 (2005);

---

[4] It is impossible to directly correlate expenditures from the Zuput account directly with the deposit of the Bank of America loan proceeds of $150,000 (the first loan), which occurred on May 1, 2020. The expenditures roughly equal the amount of the deficiency – all of which is traceable to the Zuput account – when funds were seized. The first expenditure greater than $500 after this deposit was for the purchase of a shelf corporation for $1,395 on May 6. Thereafter, the next such expenditure, a $10,000 donation to the University of Maryland, occurred two weeks later and was followed in close proximity by a vendor payment for Vangal of $2,500, payroll related expenses for Zuput of $4,995.72 and $1,613, and another purchase of a shelf corporation for $2,695. These expenditures in aggregate slightly exceed the" $16,300 shortfall when the government seized funds from Mr. Mohan's accounts in late July.

Yarmuth LLP

501 East Pine Street, Suite 201
Seattle, Washington 98122
phone 206.516.3800  fax 206.516.3888

1   *Nelson v. United States,* 555 U.S. 350, 352 (2009).  In *Pepper v. United*
2   *States,* 562 U.S. 476, 487-488 (2011), the Supreme Court stated, "It has
3   been uniform and constant in the federal judicial tradition for the
4   sentencing judge to consider every convicted person as an individual and
5   every case as a unique study in the human failings that sometimes
6   mitigate, sometimes magnify, the crime and the punishment to ensue."
7   quoting *Koon v. United States,* 518 U.S. 81, 113 (1996).  The Court in
8   *Pepper* added that "Underlying this tradition is the principle that 'the
9   punishment should fit the offender and not merely the crime,'" quoting
10  *Williams v. United States,* 337 U.S. 241, 247 (1949).

11      The Guideline range is just one factor to consider in sentencing.
12  The Guidelines are not even considered presumptively reasonable.  *See,*
13  *e.g., Nelson v. United States*, 555 U.S. 350, 352 (2009) ("The Guidelines
14  are not only *not mandatory* on sentencing courts; they are also not to be
15  *presumed* reasonable."  (Emphasis included.)  "[T]he Guidelines should be
16  the starting point and the initial benchmark."  *United States v. Gall,* 552
17  U.S. 38, 49 (2007).

18      Pursuant to the terms of the Plea Agreement, the parties agreed
19  1) the base offense is 7; 2) the loss amount is between $1,500,000 and
20  $3,500,000, resulting in a 16-level upward adjustment; 3) the
21  sophisticated means adjustment is applicable, adding two additional
22  levels; 4) the money laundering offense pursuant to 18 U.S.C. § 1957(a)
23  adds one additional level; and, 5) that Mr. Mohan has accepted
24  responsibility and qualifies for a three (3) level decrease pursuant to
25  USSG § 3E1.1.  With these adjustments, the total offense level is 23.  Mr.
26  Mohan has no criminal history.  With a criminal history category of I

Yarmuth LLP

501 East Pine Street, Suite 201
Seattle, Washington 98122
phone 206.516.3800   fax 206.516.3888

1    (zero criminal history points), the applicable guideline range is 46 to 57

2    months.

3    Although we acknowledge that this guideline calculation is correct

4    under applicable law, we believe that this range greatly overstates the

5    serious of the offense and provides ample reason for this Court to impose

6    a substantially lower sentence.  Because the total offense level in fraud

7    cases is so heavily influenced – we believe unjustly in this case – by the

8    loss amount, it tends to unfairly push the sentencing range much higher

9    than warranted by the offense conduct where there is no actual loss.

10   Thus, in this case, the adjustment attributable to loss comprises over

11   60% of the total offense level.  This may be reasonable where the

12   fraudulent conduct has resulted in significant losses or even in cases

13   where the funds were put at risk.  Yet here, the bulk of the loan proceeds

14   were secured in bank accounts from the time of receipt and no victim will

15   lose a dime because of Mr. Mohan's actions.

16   If the adjustment for loss amount in this case is based on no loss or

17   a loss of $16,000, it either does not increase the base offense (zero loss) or

18   increases it by four levels (loss greater than $15,000).  Applying these

19   alternate loss adjustments, with all other factors remaining constant, the

20   Sentencing Guideline range is either 0 to 6 months or 6 to 12.  We believe

21   these ranges provide a fairer and more just assessment of Mr. Mohan's

22   criminal conduct and are consistent with our sentencing

23   recommendation.  This fact alone provides the Court with an obvious

24   basis for a variance from the guideline range and lends support to our

25   recommendation of a sixty-day term of imprisonment.

26

SENTENCING MEMORANDUM
No. 2:21-cr-00041-JCC – Page 8

Yarmuth LLP

501 East Pine Street, Suite 201
Seattle, Washington 98122
phone 206.516.3800   fax 206.516.3888

1    Mr. Mohan's Sentencing Guideline range is also based on a one-

2    level increase because he pleaded guilty to a money laundering offense.

3    Again, we do not dispute the technical applicability of this adjustment –

4    Mr. Mohan certainly moved a portion of the loan proceeds from one

5    account to another – but suggest it unnecessarily adds to the inflation of

6    Mr. Mohan's total offense level.  There is no evidence that Mr. Mohan

7    initiated these transfers to conceal the money or to make it more difficult

8    to recover.  He simply on one occasion moved the proceeds from one

9    account to another.  The government may counter that this was done to

10   facilitate investments, but the evidence contradicts this argument.  Once

11   transferred, none was invested; it was still there when the government

12   seized it almost two months later.  This conduct hardly seems to have

13   made Mr. Mohan's crime worthy of greater punishment, yet that is

14   exactly the affect its inclusion in the Guideline calculation has on the

15   sentencing range.

16   **IV.    THE CRIMINAL CONDUCT IS ENTIRELY OUT OF**
17   **CHARACTER FOR THE DEFENDANT**

18   **A.    Mr. Mohan's Upbringing and Educational Background.**

19   Mr. Mohan, who is age 48, was born in Thrichy, India.  His parents

20   provided him with a loving home, but not one without extremely high

21   demands for Mr. Mohan.  His father was a very successful businessman,

22   who Mr. Mohan's mother described as a "superstar."  As noted, Mr.

23   Mohan's father expected excellence from his son and anything short of

24   that was a disappointment to him.  His mother, who passed away in

25   2013, was described by Mr. Mohan as a loving, generous, selfless, "people

26   person."  Nevertheless, he shared with the Probation Officer assigned to

Yarmuth LLP

501 East Pine Street, Suite 201
Seattle, Washington 98122
phone 206.516.3800   fax 206.516.3888

1  prepare the Presentence Report that she would whack him with a

2  wooden ruler on the wrist or in the face when his performance did not

3  measure up to his parents' high expectations.  In a 2013 blog, Mr. Mohan

4  wrote that he came from a family of very high achievers.  In contrast, he

5  explains that he was just a mediocre student and writes that although he

6  would not call himself a black sheep, he was "a pig in a family of sheep."

7  https://bestengagingcommunities.com/2013/06/08/how-to-punch-above-

8  your-weight-class/, Exhibit A (comments omitted).  We believe that this

9  feeling of despondency or a lack of self-worth provides insight into what

10  led Mr. Mohan to depart from his generally successful professional career

11  so abruptly and inexplicably in the midst of the pandemic.

12         Mr. Mohan graduated from the University of Mysore in 1993 with

13  a Bachelor's in Engineering degree.  The next year he emigrated to the

14  United States.  He continued his education at the University of

15  Maryland, Baltimore Campus, completing all course requirements for his

16  Master's Degree, but choosing to pursue an employment opportunity at

17  Cisco, in San Jose, California, before finishing his thesis and receiving

18  his advanced degree – an objective he never achieved.

19  **B.     Mr. Mohan's Marriage and Family Life.**

20         Mr. Mohan married Vinita Ananth in 1997.  She, like Mr. Mohan,

21  was born in India and emigrated to the United States in 1994.  They both

22  became United States citizens in 2007.  Like Mr. Mohan, Ms. Ananth is

23  an engineer.  She has been employed at Microsoft for approximately four

24  years and currently supervises a team of program managers delivering

25  cloud services to customers.  She previously held management positions

26

SENTENCING MEMORANDUM
No. 2:21-cr-00041-JCC – Page 10

Yarmuth LLP

501 East Pine Street, Suite 201
Seattle, Washington 98122
phone 206.516.3800   fax 206.516.3888

1   at Chef Software, Apptio, and Mercury Interactive (later acquired by

2   Hewlett Packard).

3       Mr. Mohan and Ms. Ananth have four children of whom they are

4   immensely proud.  Thrisha is nineteen years old and a sophomore at

5   American University in Washington, D.C., studying economics and

6   international relations.  She has previously worked as a campaign staffer

7   on the Susan Delbene and Manka Dhingra campaigns.  Rishab is

8   seventeen years old and a junior at the International School in Bellevue.

9   He has been selected to play for the United States' Under-19 Men's

10   Cricket team.  Tara and Richa, the two youngest children, are twins who

11   are fifteen years old, and were adopted by Mr. Mohan and Ms. Ananth

12   from an orphanage in India in 2011.  They also attend the International

13   School where, Mr. Mohan notes, that Tara is a mostly "A" student and

14   Richa is a gifted artist who has her own collection on Etsy through which

15   she has made sales.

16       Mr. Mohan and his wife chose to adopt their twin daughters while

17   living in India after an earlier tsunami had left scores of children

18   orphaned.  They initially responded to this natural disaster with the

19   donation of funds, but later decided the need in their home country was

20   extreme and they were able to make a more substantial commitment of

21   their lives.  They worked through an adoption coordination agency and,

22   when they met the twins, chose to adopt them both, possibly providing

23   these young girls with an otherwise unlikely opportunity for better lives

24   because in India, it is apparently more difficult to place female orphans

25   due to cultural biases.  The challenges that Mr. Mohan and his wife faced

26

Yarmuth LLP

501 East Pine Street, Suite 201
Seattle, Washington 98122
phone 206.516.3800   fax 206.516.3888

in adopting their twin daughters are recognized in a letter from one of

Mr. Mohan's childhood friends:

> We are all aware of the fact that in today's time and age, when
> both spouses work, life can be busy and resources limited; and
> here I mean not only financial but also more importantly,
> emotional and mental - but despite the odds, and despite a
> perfectly blessed and a complete family(a son and a daughter)
> Mukund had the courage and desire to adopt two baby girls -
> goes to say a lot about the character of this person. . .
>
> . . .
>
> Honestly, I am yet to find another couple in my life who have
> that big a heart and the courage to take that leap of faith, or
> the confidence in themselves to do it that fair and square.
> Today the kind of life that Mukund and Vinita have given the
> two girls is a pure selfless karma not many of us can take
> credit for.

Letter from Radhika Mukhija, Exhibit C-18.[5]  They have provided all

their children with a safe, nurturing home and look forward to

supporting them through their present and future college years.

## C.    Mr. Mohan's Professional Life.

At the time of his arrest, Mr. Mohan was the Chief of Technology

and Head of Sales for BuildDirect, a Canadian e-commerce business.  In

this position, he led a team of more than 100 persons and earned a salary

of more than $200,000 annually.  His employment, which had begun in

April 2018, was abruptly terminated when these criminal charges

---

[5] Exhibit C consists of twenty-three letters of support written by family members,
friends, and professional associates.  The first four letters are written by Mr. Mohan's
wife, Vinita, his oldest daughter, Thrisha, his father, Narayan, and his sister, Rashmi,
and are numbered C-1 through C-4.  The remaining letters are written by friends,
professional associates, and other family members and are numbered C-5 through
C-23.

Yarmuth LLP

501 East Pine Street, Suite 201
Seattle, Washington 98122
phone 206.516.3800   fax 206.516.3888

1  surfaced.  Obviously, Mr. Mohan's successful employment history makes

2  his wrongdoing even more difficult to comprehend.  At the same time, it

3  lends support to our contention that Mr. Mohan's obsession with

4  attaining higher professional recognition was a primary cause of his

5  downfall.  In his own eyes, he just didn't measure up to the high ideals

6  which had been instilled in him by his overly demanding parents.  His

7  past employment history lends more support to this assertion.

8  Fortunately, Mr. Mohan now understands the mental challenge

9  that he must overcome and is working with his counselor to regain his

10  self-respect and dignity.  We will discuss the significant steps he has

11  taken in this regard later in this memorandum.

12  Previously, Mr. Mohan had worked for a few months as a

13  consultant for Mactores, a Bellevue consulting business; for Amazon as

14  the Director of Product Management for approximately fourteen months;

15  and, for more than five years at Microsoft overseeing its outreach

16  program to promising startup businesses.  He began his Microsoft

17  engagement in 2011 in Bangalore, India as the CEO of a Microsoft

18  subsidiary, Microsoft Accelerator, and then moved back to the United

19  States in 2014 to run another Microsoft subsidiary, Microsoft Ventures.

20  He left Microsoft in December 2016 when he was recruited to join

21  Amazon.  He has explained this move and more generally his overall

22  frustration and restlessness with the traditional employment model in

23  which an employee works for a single employer for year after year,

24  opining that "Microsoft is where you go to die."

25

26

SENTENCING MEMORANDUM
No. 2:21-cr-00041-JCC – Page 13

Yarmuth LLP

501 East Pine Street, Suite 201
Seattle, Washington 98122
phone 206.516.3800   fax 206.516.3888

**D.    Mr. Mohan's Character – Devotion to Family; Generosity to Friends and Business Associates; and, a Lack of Self-Worth.**

Outside his professional life, Mr. Mohan also has much to offer.  He is a loving spouse and parent who takes a prominent role in the home. Those who know Mukund well, including his family, friends, and business associates all describe Mr. Mohan's life as one anchored in strong moral values, an unwavering commitment to his wife and four children, and an enthusiasm for helping others in his community and in the business.  Mr. Mohan's sister, Rashmi Mohan, speaks movingly of his commitment to family in this passage from a letter she has written on her brother's behalf:

> He is one of the very few fathers I know who is truly an equal partner and parent.  He is an exceptional cook and has been a role model of industriousness to his children.  He has always shared the load at home and has managed his career and household responsibilities with alacrity.

Letter from Rashmi Mohan, Exhibit C-4.

His oldest daughter, Thrisha Mohan, who is nineteen years old and a student at American University in Washington, D.C., writes movingly:

> Since my childhood, my dad has instilled in me the values of service and hardwork . . . Throughout my life, my dad has supported me and raised me to be diligent and work hard toward my goals.

Letter of Thrisha Mohan, Exhibit C-2.  Ms. Mohan expands on the influence that her father has had on her pursuit of a career in the public sector, stating:

Yarmuth LLP

501 East Pine Street, Suite 201
Seattle, Washington 98122
phone 206.516.3800   fax 206.516.3888

> He constantly encouraged me to question my current beliefs
> and learn more in order to understand the most significant
> problems that needed to be addressed.  His guidance
> influenced my decision to work in [the] Public Sector and
> ensure that equity is at the center of decision-making in
> Washington.

*Id.*  She concludes that Mr. Mohan motivated her to work in political

campaigns in Washington State and to "fight for the rights and resources

of our most vulnerable communities" and finishes her letter by stating:

> While the aspects of his life that I list in this letter do not
> absolve him of responsibility, they show a pattern of
> compassion, altruism, and kindness that is strikingly genuine
> and has bettered hundreds of lives.

*Id.*

Mr. Mohan's wife, Vinita Ananth, describes him as "a model and

caring husband and father" and an "adoring parent" who constantly

checks in on their four children.  Letter of Vinita Ananth, Exhibit C-1.

His friend and fellow-cricket enthusiast, Bhargava Vadapalli, states:

> I found him to be a committed parent.  He was always
> available to help all kids, not just his own, be it throwing
> balls, cheering them on the sidelines, giving them a pep-talk,
> running errands, scouting/planning for practices and game,
> lifting energy or whatever was required,  It was clear that
> Mukund was the confidant "uncle" to the kids on the field and
> he lifted everyone's energy on and off the field with his
> positivity and brought the club together with a joyous spirit.

Letter of Bhargava Vadapalli, Exhibit C-21.

Others who know Mr. Mohan well consistently remark about his

generosity and genuine interest in helping others.  Arun Vaidyanath, a

friend observes that Mr. Mohan's personal values and beliefs come from

SENTENCING MEMORANDUM
No. 2:21-cr-00041-JCC – Page 15

Yarmuth LLP

501 East Pine Street, Suite 201
Seattle, Washington 98122
phone 206.516.3800   fax 206.516.3888

strong morals influenced and imbued into him by his parents and family, and "[i]t is with this value system that Mukund jumps in whole-heartedly to help anyone in need." Letter of Arun Vaidyanath, Exhibit C-22. This trait is again emphasized by the man who hired him at Microsoft India, who writes:

> Mukund has since become a great friend, a good sounding board and a wise counsel for me on so many fronts. I have reached out to him so many times over the years when faced with a difficult decision at work, an investment decision or a career choice. He has always been available to listen and is always generous with his time to guide me through any situation, with no expectation of anything in return. He can see the good in people and help them bring their best to work.

Letter of Amaresh Ramaswamy, Exhibit C-20. Given this generosity of time and commitment to his fellow man, it is not surprising that all have expressed shock and disbelief that he strayed so abruptly from his life-long values.

Mr. Mohan describes himself as an entrepreneur whose capacity for new ideas is in constant over-drive, while his ability to follow-through is mostly absent. He acknowledges that he is envious of successful entrepreneurs, not because they have realized significant financial gain, but because they have earned the accolades of their peers.

Indeed, Mr. Mohan wrote another blog in 2013 entitled, "How to deal with startup failure. A personal story." In this blog, Mr. Mohan provides considerable insight into his persona and his struggles to create and develop. In part he writes: "Since I tend to tinker a lot, I have also failed at many of my side projects. In fact, I have the distinction of not having succeeded in any of my side projects in the last 4 years (4 side

Yarmuth LLP

501 East Pine Street, Suite 201
Seattle, Washington 98122
phone 206.516.3800   fax 206.516.3888

1  projects.).” https://bestengagingcommunities.com/2013/06/09/how-to-
2  deal-with-startup-failure-a-personal-story/, Exhibit D.  He then provides
3  a litany of his failures with such business ideas as a website to provide
4  pricing transparency for various product and an ecommerce business to
5  market various goods.  *Id*.

6     When the pandemic struck, he learned from his entrepreneurial
7  friends who had ongoing businesses that they had obtained PPP loans.
8  He leaped into his short-lived fraud scheme with minimal to no thought
9  about what he would do with the loan proceeds and no thought about the
10  consequences.  After procuring the five PPP loans, he stopped.  There
11  was simply no next step to take because he had no plan.  His wrongdoing
12  stopped as abruptly as it began.

13     His perceived lack of self-worth may suggest the motivation for his
14  episodic conduct.  Possibly his upbringing together with the pressure
15  which Mr. Mohan placed on himself to fulfill his long-held dream of
16  successfully developing a startup business, led to his downfall.  He acted
17  not for economic gain but rather for the recognition of his peers that he
18  has the intellect and the management skill to succeed in this arena.  We
19  believe this obsession is at the core of his wrongdoing.

20     The government may point to Mr. Mohan's parallel deceitful
21  conduct in two consulting contracts in which he created false identities as
22  further evidence that he is a serial fraudster.  We believe this conduct
23  which occurred at almost the same time as he was applying for the PPP
24  loans is simply more evidence of his unhealthy mental state in mid-2020.
25  He used fictitious names to qualify for two sets of small consulting
26  projects for which he possessed the requisite expertise but lacked the

SENTENCING MEMORANDUM
No. 2:21-cr-00041-JCC – Page 17

Yarmuth LLP

501 East Pine Street, Suite 201
Seattle, Washington 98122
phone 206.516.3800   fax 206.516.3888

1  necessary credentials.  Mr. Mohan procured these contracts in the names

2  of fictitious persons and then satisfactorily performed the work, for which

3  he received a total of approximately $2,000.  Again, there was flawed

4  thinking, but no economic loss.  Mr. Mohan did not act for the money, but

5  rather to satisfy his pursuit of more professional acclaim.  As with the

6  PPP loan fraud, Mr. Mohan stopped on his own accord.

## V.   A SENTENCE OF SIXTY DAYS IMPRISONMENT AVOIDS SENTENCING DISPARITY

9  As the Court may already be aware, Mr. Mohan's case is one of a

10  plethora of cases nationwide involving PPP loan fraud.  There are four

11  such cases, including Mr. Mohan's case, in this District alone.  One such

12  case, *United States v. Zhang*, 2:20-cr-00169-RAJ (WDWA 2020), has been

13  sentenced and, we submit, offers important guidance for the sentencing

14  in this case.  The third PPP loan fraud case in this District, *United States*

15  *v. Hsu*, 2:20-cr-00191-JLR (WDWA 2020) is set for sentencing on August

16  10.  The remaining case, *United States v. Shibley*, 2:20-cr-00174-JCC

17  (WDWA 2020), is currently set for trial on November 15, 2021.

18  Nationally, the cases that have already reached the sentencing stage

19  provide a mosaic of varying facts and circumstances and of sentences

20  imposed.  Most are factually dissimilar to the present case and offer little

21  guidance.

22  In this section, we think it most helpful to initially focus on the

23  single PPP loan fraud case which has been sentenced in this District.

24  Factually, the *Zhang* case has many striking similarities to the present

25  case.  Mr. Zhang sought a series of loans based on fraudulent

26  information, including four PPP loans for amounts ranging from

SENTENCING MEMORANDUM
No. 2:21-cr-00041-JCC – Page 18

1   $325,000 to $600,000.  The government took the position that the total

2   intended loss, after accounting for some duplicate loan applications, was

3   $943,500.  This conduct occurred over a two-month period.  Only the

4   $325,000 loan was funded, but the funds never reached the defendant's

5   accounts because of an account numbering issue.  The remaining loan

6   applications were canceled by the defendant, but only after one potential

7   lender had questioned him about false information which he had

8   provided.

9        In addition, Mr. Zhang also pursued and received several Economic

10  Injury Disaster Program Loans ("EIDL") and privately funded COVID

11  relief loans totaling $16,500.[6]  On the day the defendant received some of

12  the initial loan proceeds, he initiated a series of transfers, including an

13  $11,000 transfer to his investment account.[7]  The Plea Agreement

14  included a provision that the defendant pay restitution of $16,500.

15       By comparison,  Mr. Mohan sought approximately $1.7 Million,

16  after accounting for duplicate and withdrawn loans.  Although Mr.

17  Mohan received more in loan proceeds, each spent about the same

18  amount of the ill-gotten gain, *i.e.*, $16,500.  Mr. Zhang also tapped into a

19  separate pandemic assistance loan program – the EIDL program

20  intended for restaurant workers and downtown business owners – with a

21

22  [6] The EIDL program is a parallel program designed to provide economic relief to small
    businesses that are currently experiencing a temporary loss of revenue.  EIDL

23  proceeds can be used to cover a wide array of working capital and normal operating
    expenses, such as continuation of health care benefits, rent, utilities and fixed debt

24  payments.  If an applicant also obtains a loan under the PPP, the EIDL funds cannot
    be used for the same purpose as the PPP funds.

25  [7] Unlike this case, Mr. Zhang was not charged with, or required to enter a guilty plea
    to, a money laundering offense, although the facts seem to support such a charge.  This

26  difference reduced his total offense level by one level and his guideline range by six
    months, from 37-46 months to 31-41 months.

Yarmuth LLP

501 East Pine Street, Suite 201
Seattle, Washington 98122
phone 206.516.3800   fax 206.516.3888

1  series of false loans in the names of himself, his wife, and both of his

2  parents.  Mr. Mohan did not do this.

3      Mr. Zhang, like Mr. Mohan, was a well-educated computer

4  engineer.  After his graduation with a Master's Degree from the

5  University of Florida, Mr. Zhang had worked at several high-tech

6  businesses, including Amazon.  At the time of his criminal conduct, he

7  was employed as an engineer for Lyft.  Mr. Mohan has a similar

8  employment history.  Moreover, each had a sizeable income at the time of

9  their respective offenses with Mr. Zhang earning more than $19,000 per

10  month, or just about the same amount that Mr. Mohan earned at

11  BuildDirect.

12      Mr. Zhang argued in his Sentencing Memorandum that,

13  notwithstanding the Sentencing Guideline calculation of a loss figure

14  between $550,000 and $1,500,000, his loss was fairly viewed as only the

15  $16,500 he actually received.  The government countered that the sole

16  reason for the defendant canceling the other loan applications and not

17  receiving the loan proceeds was because he had been caught by a lender.

18  On this record, the government recommended a 33-month term of

19  imprisonment and a $100,000 fine, while Probation – in striking contrast

20  to this case – and the defendant recommended a non-custodial sentence.

21  In part, Mr. Zhang argued that a collateral consequence of his conviction

22  was likely to be deportation.  Judge Jones sentenced the defendant to a

23  sixty-day term of imprisonment, a three-year term of Supervised Release,

24  a $5,000 fine, and restitution of $16,500.

25      Probation defends its starkly different sentencing

26  recommendations in these two factually similar cases on two grounds:

Yarmuth LLP

501 East Pine Street, Suite 201
Seattle, Washington 98122
phone 206.516.3800   fax 206.516.3888

1    (1) that Mr. Zhang did not pose a risk to the community because he was

2    likely to be deported following his sentence and, therefore, a custodial

3    sentence was not necessary to protect the community, while Mr. Mohan

4    will be staying in the community, and (2) that it did not believe a

5    custodial sentence was necessary to deter Mr. Zhang from further

6    criminal conduct, while it worried that Mr. Mohan, who remains

7    committed to entrepreneurial efforts and intends to remain an

8    established part of the technological and financial communities, poses a

9    risk to the public.

10           We respectfully submit that these two grounds are tenuous at best.

11   First, relying on the likelihood of deportation as a basis for

12   recommending a non-custodial sentence for a non-citizen implicates both

13   discriminatory and practical concerns.  Such a rationale would mean that

14   non-citizens should be sentenced to non-custodial sentence while citizens

15   should be incarcerated for the same criminal conduct.  This is

16   fundamentally unjust and results in criminal sentences based on status.

17   Moreover, it is clearly erroneous to assume that a non-citizen whose

18   criminal conduct may lead to deportation proceedings will be dispatched

19   to his/her country of birth expeditiously.  In reality, such deportation

20   proceedings often involve years of litigation while the subject remains at

21   liberty on whatever visa brought him to this country in the first place.

22   Indeed, the Court clearly recognized that Mr. Zhang was going nowhere

23   soon because it imposed as a special condition of Supervised Release, a

24   requirement of 120 hours of community service to be completed in the

25   first two years of Supervised Release.

26

SENTENCING MEMORANDUM
No. 2:21-cr-00041-JCC – Page 21

Yarmuth LLP

501 East Pine Street, Suite 201
Seattle, Washington 98122
phone 206.516.3800   fax 206.516.3888

1    Second, as discussed in greater detail later in this memorandum,

2    there is no evidentiary basis for the speculation that Mr. Mohan poses a

3    risk to reoffend.  His technological expertise and his enthusiasm for

4    entrepreneurial pursuits say nothing about his propensity to again

5    commit fraud.  His many years of professional accomplishment and his

6    selfless generosity and mentoring say a great deal about the likelihood of

7    Mr. Mohan successfully rebuilding his life.  His on-going work with

8    Lonnie Kaman lends strong support to this conclusion.  The record is

9    simply devoid of support for the concern that he will reoffend.

10   In short, we do not believe there is any legitimate basis for

11   Probation to have recommended a non-custodial sentence for Mr. Zhang,

12   but a two-year custodial sentence for Mr. Mohan.  Such a disparity is

13   precisely the sort of factor that Section 3553a is intended to guard

14   against.

15   We believe that Probation was on target with its non-custodial

16   sentencing recommendation for Mr. Zhang.  The sentence imposed in

17   that case suggests that the Court generally agreed with the

18   recommendation.  For the reasons set forth above, we believe that Mr.

19   Mohan should receive the same sixty-day term of imprisonment which

20   the Court imposed in the *Zhang* case.  There is no rational justification

21   for a different sentence in this case.

22   If, on the other hand, this Court finds that one or more of the facts

23   distinguishing these two cases requires an enhanced sentence for Mr.

24   Mohan, we respectfully urge that the enhancement be no more than one

25   or two additional months of incarceration.  There are simply too many

26   similarities to justify a disparity in sentences of the proportion

Yarmuth LLP

501 East Pine Street, Suite 201
Seattle, Washington 98122
phone 206.516.3800   fax 206.516.3888

1   recommended by Probation.  If the facts of these two cases are adjudged

2   to be dissimilar, the separation should be measured in months rather

3   than years.

4         Of the myriad of PPP loan fraud cases prosecuted nationally, the

5   facts of one such case – *United States v. Jaafar*, 1:20-cr-185-CMH

6   (EDVA, 2020) – lends further support to our recommendation of a short

7   term of incarceration.  In the EDVA case, Tarik Jaafar and his wife,

8   Monika Magdalena Jaworska, submitted eighteen fraudulent PPP loan

9   applications for four businesses, all of which were shell companies, to

10  twelve financial institutions.  (Mr. Mohan submitted less than half of the

11  number of fraudulent loan applications to five financial institutions.)  In

12  total, Mr. Jaafar sought $6.6 Million.  (Mr. Mohan sought approximately

13  $3.4 Million, after accounting for duplicate and withdrawn loan

14  applications, for five businesses.)  Mr. Jaafar received $1.4 Million.  (Mr.

15  Mohan received $1,786.357.)  Mr. Jaafar also applied directly to the

16  Small Business Administration for two EIDL loans and received one

17  $10,000 advance.  (Mr. Mohan did not seek any EIDL loans.)

18        Mr. Jaafar was highly educated, having earned a doctorate in

19  economics from the University of Strasbourg.  From 2001 to 2018,

20  according to the government's Sentencing Memorandum, he worked in

21  the very financial industry that he later admitted to victimizing, holding

22  positions in several well-known banks.  He earned over $200,000 per year

23  when last employed.  He had apparently been unemployed since

24  sometime in 2019.  (Mr. Mohan is likewise well-educated and has held

25  significant positions in the high-tech world.)

26

SENTENCING MEMORANDUM
No. 2:21-cr-00041-JCC – Page 23

Yarmuth LLP

501 East Pine Street, Suite 201
Seattle, Washington 98122
phone 206.516.3800   fax 206.516.3888

1    In many respects, the cases of Mr. Jaafar and Mr. Mohan are

2    virtually indistinguishable.  One pronounced difference, however, is that

3    after Mr. Jaafar learned of the investigation, he purchased one-way

4    tickets for himself, his wife, and two children to fly from New York to

5    Poland.  They were arrested in a parking garage across from Terminal 7

6    at John F. Kennedy International Airport where the Polish airline was

7    located.  They had 18 bags, almost $50,000 in cash, and numerous cell

8    phones and laptops in their possession at the time they were arrested.

9    Mr. Jaafar was detained for five months pending his guilty plea and

10   sentencing.  (Mr. Mohan answered the door when visited by agents

11   serving a search warrant at his residence, voluntarily appeared the next

12   day for his initial appearance, and has remained in compliance with the

13   terms of his pretrial release.)  According to Mr. Jaafar's Sentencing

14   Memorandum, all loan proceeds were frozen before being withdrawn

15   except for $30,000, which was recovered when he was arrested.  He

16   represented that he did not spend any of the money.

17        Mr. Jaafar pleaded guilty to a single conspiracy count in violation

18   of Title 18, United States Code, Section 371.  (Mr. Mohan pleaded guilty

19   to both wire fraud and money laundering offenses.)  The sentencing

20   guideline range for Mr. Jaafar was 24 to 30 months, without adjustments

21   for sophisticated means or the money laundering conviction.  In Jaafar,

22   the government recommended a 24-month sentence.  (Mr. Mohan sought

23   less money than Mr. Jaafar and spent but a fraction of the funds

24   received, yet he has a guideline range of 46 to 57 months.  The

25   government is committed to recommending a sentence of 46 months or

26   less – which is almost twice Mr. Jaafar's guideline range and twice the

1   recommended sentence.)  On this record, Mr. Jaafar was sentenced to

2   serve a term of one year imprisonment.[8]  No fine was imposed.

3        In short, there is a stark disparity between the outcome for Mr.

4   Jaafar and the sentences recommended by Probation and the government

5   for Mr. Mohan.  The two defendants committed virtually the identical

6   crime, involving the use of shell companies and false tax returns.  Mr.

7   Jaafar's offense was more egregious because he sought to defraud a

8   second CARES Act program and, more importantly, because he

9   attempted to flee to a foreign country to avoid prosecution while Mr.

10  Mohan surrendered voluntarily and scrupulously adhered to every term

11  of pretrial release.[9]  Moreover, there is no suggestion that Mr. Jaafar's

12  background or any mental health concern was a factor in his criminality.

13  Mr. Mohan's sentence should rightly be much less than that imposed

14  against Mr. Jaafar.

15       Further, we believe it noteworthy that the government apparently

16  did not threaten Mr. Jaafar with the "double whammy" even though it

17  appears that he was a substantial wage earner and financially well-off

18  before his arrest.  There is no mention in either the government or the

19  defendant's sentencing memoranda of any restoration issue, even though

20  they agreed on a restitution figure of $220,573.  Nor did the government

21  insist that the defendant agree to a fine of any amount and no fine was

22  imposed as part of the sentencing.

23

24

25  [8] Ms. Jaworska received a sentence of time served – approximately five months.

26  [9] Inexplicably, on this record, Mr. Jaafar was still given credit for accepting
    responsibility.

SENTENCING MEMORANDUM
No. 2:21-cr-00041-JCC – Page 25

As noted, there are a myriad of other PPP loan fraud cases which have been prosecuted nationally.  Most of these cases are readily distinguishable from the present case, however.  In general, these cases fit into one or more of the following groups:

(a)    Some involve substantially greater numbers of loans or sums of aggregate loan proceeds, more substantial losses to victims, or other egregious facts, *see, e.g., United States v. Hines*, 1:21-cr-20011-MGC (SDFL, 2021)  (defendant – sentenced to 78 months imprisonment – sought in excess of $13 Million and received almost $4 Million; restitution = $4,809,307) and *United States v. Lewis*, 1:20-cr-336-1 (MDNC, 2021) (defendant – sentenced to 63-months imprisonment – applied for 68 fraudulent EIDL loans; operated a separate fraudulent kitchen products website on which he marketed, but never delivered, items valued at more than $400,000; operated a separate scheme promising COVID-19 Relief Funds for a fee, but again failed to provide such loans);

(b)    Others involve obvious greed and waste (*see, e.g., United States v. Smith*, 2:20-cr-196 (EDWI, 2021) (defendant – sentenced to 57 months imprisonment – acknowledged case involved "old fashioned greed" in his sentencing letter; recruited others to apply for fraudulent PPP loans; took percentage of fraudulent PPP loans he helped others obtain); *United States v. Hines* (defendant purchased Lamborghini)); *United States v. Suber,* 2:20-cr-110 (EDVA, 2021) (defendant – sentenced to 24 months imprisonment – withdrew large sums of cash and traveled to Las Vegas); *United States v. Tubbs,* 4:20-cr-00193-BSM (EDAR, 2021) (defendant – sentenced to 41 months imprisonment – applied for, and received, two PPP loans totaling $1,933,262; immediately upon receipt transferred more than $1 Million to other bank accounts he controlled; spent $14,000 for debit card purchases and student loan payments; transferred $150,000 as purported lottery winnings to a niece; and, the government and defendant agreed that neither would seek a departure or variance from the sentencing guidelines);

Yarmuth LLP

501 East Pine Street, Suite 201
Seattle, Washington 98122
phone 206.516.3800   fax 206.516.3888

1

2

3

4

5

6

7

8

9

     (c)    While yet others involve defendants who have significant criminal records and/or drug addiction issues (*see*, *e.g.*, *United States v. Cherry*, 4:20-cr-00027 (EDVA, 2021) (defendant – sentenced to 51 months imprisonment – is a fraud recidivist with a Criminal History Category of V); *United States v. Hines* (defendant had serious drug problem since childhood and multiple criminal arrests); *United States v. Kanan*, 3:20-cr-00081-WMC (WDWI, 2021) (defendant – sentenced to 42 months imprisonment – has prior federal fraud conviction and stipulated to 41-month sentence); *United States v. Stanley*, 1:21-cr-20067 (SDFL, 2021) (defendants Stanley and Philus – sentenced to 18 months and 30 months, respectively – conspired to submit fraudulent loan applications; Philus had five criminal history points).

10

11

12

13

14

15

16

17

18

    None serve as a reasonable guide for the sentencing of Mr. Mohan. Nevertheless, the government may urge that the *Tubbs* case is one to which the Court ought to pay particular attention. We disagree. All we really know about Ms. Tubbs is the factual summary offered in subparagraph (b) above. Because neither the government nor the defendant filed a sentencing memorandum, we have no way of knowing what underlying circumstances led to the agreed no departure and no variance provision in the plea agreement or to the sentence. Given this paucity of information, the case provides little guidance for this Court.

19

20

21

22

23

24

25

26

    The government may also suggest that many of these PPP loan fraud cases have resulted in sentences of multiple years rather than the sentences imposed in the *Zhang* and *Jaafar* cases and that this should guide this Court. Such a suggestion ignores the requirements of Section 3553a, however, that a sentence be molded to the individual case and individual defendant. As already noted, the vast majority of these cases involved substantially larger numbers of loans or greater amounts of loan proceeds; the cases involve the frivolous spending of the loan proceeds;

Yarmuth LLP

501 East Pine Street, Suite 201
Seattle, Washington 98122
phone 206.516.3800   fax 206.516.3888

or, the cases involve defendants with criminal histories.  Mr. Mohan's case stands apart and his sentence should as well.

## VI.   A SENTENCE OF SIXTY DAYS IMPRISONMENT ADDRESSES THE NEED FOR BOTH GENERAL AND SPECIFIC DETERRENCE

In addressing the concept of specific deterrence, the Court must rely on such factors as the nature and context of the offense, the defendant's background and character; his contriteness and remorsefulness; and any articulable facts that reflect the defendant's efforts to learn from, and move beyond, his wrongdoing.

Here, we believe all the evidence portends that Mr. Mohan will rebuild his life and return to his former productive, law-abiding ways. Mr. Mohan readily acknowledges that his actions in submitting false information and made-up documentation for these loans were blatantly wrong.  He realizes that these were loans intended by Congress to help existing businesses survive the pandemic; not to provide seed money for new ventures.

> I owe a lot of my life, my freedom, and positions in life to the people and institutions to the USA.
>
> Which is why I am horrified that I cheated the people paying taxes, hardworking small business owners, bankers, and the government by acquiring forgivable PPP loans falsely during the Covid crisis.  My actions are unconscionable.

Letter of Mukund Mohan, Exhibit B.

What Mr. Mohan did was clearly wrong.  He has acknowledged and expressed his remorse for this wrongdoing to his family, his friends, and to all who have trusted him in the business community.

Yarmuth LLP

501 East Pine Street, Suite 201
Seattle, Washington 98122
phone 206.516.3800   fax 206.516.3888

> I believe I have a good moral compass, but I failed my family, friends, colleagues, acquaintances, and people who trusted me.

*Id.*

The lingering question, of course, is whether Mr. Mohan's mental state may place him at risk of again going "tilt." In this regard, we believe it appropriate to place great reliance on the opinion of his mental health counselor, whose expertise and experience ideally qualify her to make such an informed assessment. In the following excerpt from her letter to counsel, Ms. Kaman opines:

> I believe Mr. Mohan takes this situation very seriously and is extremely remorseful for his poor decision making resulting in the instant offense. He stated he wants to continue mental health treatment to better understand himself and to make sure this never happens again. It is my professional opinion that with continued mental health treatment, Mukund Mohan has a low risk of reoffending and poses no danger to the community.

Letter of Lonnie Kaman, MA, LMHC, Exhibit E.

At this point, there is absolutely no reason to conclude Mr. Mohan will ever reoffend. He has dealt with this set back in a mature and intelligent manner. He has cooperated with the authorities. He has done everything he can to regain the trust and respect of those around him, while making amends for his wrongdoing.

Probation reaches the opposite conclusion, but perhaps more as an advocate than as a neutral entity evaluating all the evidence. For example, without evidentiary basis, the justification for their sentencing recommendation rests in part on speculation that Mr. Mohan's failure to spend the loan proceeds suggests some Machiavellian plan to later file

Yarmuth LLP

501 East Pine Street, Suite 201
Seattle, Washington 98122
phone 206.516.3800   fax 206.516.3888

1  fraudulent paperwork indicating the funds had been spent on permissible

2  expenses and to thereby gain forgiveness of the loans.  It also is critical of

3  his continued devotion to entrepreneurship and suggests that this

4  interest, when coupled with his constant comparison to other

5  businessmen's successes, pose a dangerous combination.

6       This speculation does not appear to be grounded on anything more

7  than conjecture.  We submit that a better guide to what may be

8  reasonably expected from Mr. Mohan is his counselor, who has spent

9  multiple sessions with him and has thoroughly come to understand who

10  he is and what mental demons he has been fighting.  Thus, we do not

11  believe a lengthy term of imprisonment, or for that matter, any

12  incarceration is required to ensure that Mr. Mohan does not commit

13  further fraud.  He had stopped his wrongdoing two months before law

14  enforcement knocked on his door.  If he needed any further prodding to

15  turn his life around, it was delivered by that knock on the door and has

16  been further reinforced by these criminal proceedings.

17       We do, however, agree with Probation that requiring Mr. Mohan to

18  participate in a Moral Reconation Therapy program ("MRT") would

19  provide further insurance of Mr. Mohan's long-term success.  It is our

20  understanding that Ms. Kaman is regarded as having considerable

21  expertise with the MRT program and is prepared to assist Probation and

22  Mr. Mohan in this counseling.

23       In short, Mr. Mohan is anxious to complete whatever sentence the

24  Court deems necessary to impose and then to move forward.  He is

25  pragmatic and recognizes that his days of working as an executive with

26  significant technical responsibilities are probably long gone.

SENTENCING MEMORANDUM
No. 2:21-cr-00041-JCC – Page 30

Yarmuth LLP

501 East Pine Street, Suite 201
Seattle, Washington 98122
phone 206.516.3800   fax 206.516.3888

1   Nevertheless, he believes his future is bright.  He looks forward to

2   supporting his children as they continue their secondary education and

3   their college pursuits.  He is also excited about the business opportunities

4   that he sees ahead.  One such business endeavor involves Mr. Mohan

5   using his substantial research capabilities to provide investors with

6   detailed analyses of various smaller or more recently founded businesses

7   that have become available to the public through recent IPOs.  He has

8   already published many such analyses on an open-source website.  This

9   work product has been extremely well-received with more than 35,000

10   respondents.  Examples of this analytical work are attached as Exhibit F.

11   Mr. Mohan has been assured by many of his followers – who are aware of

12   his current criminal travails – that they would be willing to pay a

13   monthly subscription fee for his service.

14        The government may point to his use of false identities in his

15   consulting work as a reason for concern that he will reoffend.  As we have

16   explained, however, this conduct, which occurred at the same time as the

17   loan fraud and appeared to be similarly grounded in his lack of self-

18   image, was simply another manifestation of an emotional and

19   professional breakdown of sorts.  Mr. Mohan simply went "off the rails."

20   Since this interlude, he has done everything humanly possible to regain

21   his moral compass.

22        General deterrence is an even more nebulous goal.  We believe,

23   however, that whatever general deterrence may come from Mr. Mohan's

24   case has already been achieved by the extensive media attention to the

25   corporate executive's downfall.  No one reading about his criminal

26   prosecution and his concomitant dismissal from his corporate position

Yarmuth LLP

501 East Pine Street, Suite 201
Seattle, Washington 98122
phone 206.516.3800   fax 206.516.3888

could believe that crime is worth the risk.  There is no reason to believe that any period of incarceration would further cement this deterrence.  If, on the other hand being sentenced to some term of imprisonment is needed to deter the public, then we are confident that a sixty-day term of imprisonment will suffice.

We should also point out that on much the same record, Probation reached the opposite conclusion regarding whether Mr. Zhang needed to be imprisoned to provide general deterrence.  To the extent Probation reasoned that no jail was necessary because it expected him to be deported, the public would have been unlikely to have grasped this nuance.  If general deterrence was accomplished in the *Zhang* case by a recommendation of a non-custodial sentence, then it is impossible to rationalize why a recommendation of two years imprisonment is necessary to accomplish the same purpose in the *Mohan* case.

### VII.   WHEN VIEWED HOLISTICALLY, A SENTENCE OF SIXTY-DAYS IMPRISONMENT COUPLED WITH A THREE-YEAR TERM OF SUPERVISED RELEASE AND A $100,000 FINE IS SUFFICIENT, BUT NOT GREATER THAN REQUIRED TO PUNISH MR. MOHAN

A sentence that imposes a period of imprisonment, a lengthy term of supervision, several restrictive special conditions of Supervised Release, a fine, and restitution is overwhelming, especially to a man who has never spent a day in jail or under post-conviction supervision. Facing his children and acknowledging his wrongdoing has been among his greatest emotional challenges.  The anticipated separation from his family – no matter the duration of the separation – is among his greatest heartaches.  While he very much regrets his wrongdoing and

Yarmuth LLP

501 East Pine Street, Suite 201
Seattle, Washington 98122
phone 206.516.3800   fax 206.516.3888

1  understands that he has caused enormous hurt to his wife and each of

2  his children, he is extremely anxious that the period of separation which

3  will come with his imprisonment be as brief as possible.

4      This is especially true because of the unfortunate timing of his

5  sentencing.  Mr. Mohan's only son, will be a senior at the International

6  School and will be heading off to college after the next school year.  His

7  adopted twin daughters, who will be sophomores at the International

8  School in the fall, are also entering their final years at home before

9  college.  Mr. Mohan very much fears that he will miss the opportunity to

10  spend this last period of time with his son and younger daughters before

11  they are out of the house and off on their own.  This is, for every family,

12  an important and emotional time.  Because, as many of Mr. Mohan's

13  character reference letters recognize, he has been a devoted parent who

14  has taken an active role in the home raising his children, any period of

15  separation looms very large for him.

16      A sixty-day sentence is itself a significant punishment.  When

17  considered in light of the additional year during which Mr. Mohan has

18  had to bear the stress and anxiety of the criminal process and the three

19  years of Supervised Release that will follow his incarceration, the

20  nightmare of his wrongdoing will have been front and center in his life

21  for more than four years.

22      Some may argue that because of Mr. Mohan's financial standing, a

23  fine of $100,000 is not substantial, but we would respectfully disagree.

24  Such a fine must be viewed in light of the serious collateral consequences

25  that Mr. Mohan has experienced and will continue to experience.

26  Practically speaking, he is no longer employable and his income for many

SENTENCING MEMORANDUM
No. 2:21-cr-00041-JCC – Page 33

Yarmuth LLP

501 East Pine Street, Suite 201
Seattle, Washington 98122
phone 206.516.3800   fax 206.516.3888

years has been lost.  Although Mr. Mohan and his wife have substantial net worth, primarily in the form of two homes which they are purchasing, they also have very high monthly expenses.  When one or more college tuitions are added to their financial burden, a $100,000 fine looks very imposing.

Thus, we submit that the sentencing recommendation that we have proposed is a very significant punishment for Mr. Mohan's short-lived period of criminality during which no one suffered a monetary loss.  No greater sentence is required or just under the circumstances.

### VIII.   CONCLUSION

For the reasons set forth in this memorandum, we respectfully request that the Court sentence Mr. Mohan to a term of sixty-days imprisonment, with a recommendation that such time be served in the camp at FCI Sheridan, Supervised Release for a term of three years with the special conditions recommended by Probation, together with a $100,000 fine, and the mandatory penalty assessments.

Dated this 13th day of July, 2021.

**YARMUTH LLP**

By: *s/ Robert Westinghouse*
Robert Westinghouse, WSBA No. 6484
501 East Pine Street, Suite 201
Seattle, WA 98122
Telephone: (206) 516-3800
Email: rwestinghouse@yarmuth.com

*Attorneys for Defendant Mukund Mohan*



Yarmuth LLP

501 East Pine Street, Suite 201
Seattle, Washington 98122
phone 206.516.3800   fax 206.516.3888

# **EXHIBIT A**

# Best Engaging Communities

# How to punch above your weight class

JUNE 8, 2013 | MUKUND MOHAN | 20 COMMENTS

I have been mostly an under performer. There's a big difference between an under performer and an under achiever – the later does not give 100%, but the former gives "his best" and is still middling.

I have had several teachers and relatives (especially those overachieving uncles) who would always tell me "You can do more". They did not tell me I could do better. They would say I could do more. It was as if they almost knew I was peaking and still in the middle of the pack.

Whether it was grades, swimming or violin, I was always the "middle of the pack or lower". I remember many parent-teacher (PTA) meetings, where my mom would be asked "What does Mukund's dad do?" and after my mom mentioned, that he was a superstar, the teacher would be largely incredulous, shake her head and say "Then why is he just not doing well in <fill in the blanks>"? Back in the '80s it was okay to be politically incorrect I guess.

It did not help that I came from a family that had very high achievers. I wont call myself the black sheep, its just that I was a pig in a family of sheep.

Graduating from high school, I was at the "top" of the middle of the pack. Not for the lack of trying.

I realized I was not as smart as most other people in my class. Neither was I really willing to work way too hard to make up for the lack of smarts. Well, actually I thought I was working harder than most, but I was not able to get much better. I was just wanted to flow with the tide and go along for the ride.

Things at college did not change much. Sam Lomonaco (http://www.csee.umbc.edu/~lomonaco/), who taught us algorithms, once asked me if I really was from India, since most of the folks he knew from there were "super smart" and he wanted to know why I was not so.

My confidence, was not at a super high when I started working at Cisco. My hiring manager, Mark really liked me because I knew the one thing that most of the other folks in his team did not. They were largely "business analysts" and I was the only "developer".

That's when I started to hit my stride.

They usually say "In a pack of ducks a swan looks ugly (http://en.wikipedia.org/wiki/The_Ugly_Duckling)".

In business though it always helps to be the "one with a different perspective". I was the only one in Mark's team asking technical implementation questions when they wanted to build anything.

My questions were deemed "smart" or really "different" since none of the others had thought of those. I, on the other hand could not think of any other questions but those.

The **first rule of punching above your weight class is to surround yourself with people who you complement.**

Later you can surround yourself with people who complement you. Early on though, you have to complement them. That way you achieve two things – you avoid "group think" and you really give them a perspective that's different.

In late 2001, I had a meeting where David Reichman (www.linkedin.com/pub/david-reichman/0/655/157), (who managed me for a few years) during which it was clear to him that I was "making sh\*t up" to answer his questions. After 30 minutes of grilling he said "If you don't know, then say you don't know or just ask more questions, don't give dumb answers".

Boom! That was it. All I did after that was start asking questions, since I was neither smart enough to have answers or disciplined enough to work hard to get those answers. Better to have smart people give me the answers.

I learnt the **second rule of punching above my weight class – Put yourself in a position where your biggest weakness becomes your largest strength**.

A few years later, I started to be a little more disciplined. I actually learned to "think" much later in life. I guess I was a "late bloomer" in the field of "thinking". My initial years were relegated to doing with the sense of "I have to do this because <fill in the blanks> – pass exams, get admission, whatever.

In 2006, I had a chance to make new friends at an event called Community 2.0 (http://www.emergencemarketing.com/2006/11/24/upcoming-community-20-conference/). Francois was the chairperson of the event. I had dinner with him and others including Chris Carfi, Aaron Strout, Nate Ritter, Chris Heuer and Lee Lefever. I am not sure who said it but when asked them what the best part of their life was, even though they were not the super success they'd like to be, they said "That's because I do things for myself".

**I then understood the rule three of punching above your weight class – do things for yourself instead of living to other's expectations.**

Steve Jobs has also said this in his famous commencement speech at Stanford.

I now blog so **I** can go back and **read my posts**, I play tennis so **I can enjoy the outdoors**, I meet entrepreneurs so **I can learn**. That's possibly selfish, but I figured out that if I am happy that's all that matters to my mind.

Those who know me well are surprised that it took me so long to "figure this out". I guess they thought that coming from a smart family with a super achieving dad, social butterfly for a mom, an insanely talented sister and an naturally smart wife, I have it all and I had been blessed, so I should have figured these things out much earlier.

I seek consolation from the fact that every person takes their own time. Every person is really different and hits their stride at their own pace. They measure up to others expectations and perceptions much later in their life, if at all.

Case 2:21-cr-00041-JCC　Document 54　Filed 07/13/21　Page 40 of 119

Now when I meet entrepreneurs who are from an excellent pedigree and background, I am more cognizant of the pressures and internal daemons they face. When I meet entrepreneurs who have on the flip side, not had the breaks and chance, I try to give them time.

Mostly though, I apply this learning to the expectations I have of my kids. They will find their groove at some point. During the journey though, I realize the sense of disappointment I have with them not punching even at their weight class. Those expectations are the ones that I have to work on the most.

They too, will find their formula at a time that's right for them. Until then they are doing just fine – for themselves. Which is what matters the most.

# **EXHIBIT B**

Mukund Mohan                                                                                                    6/8/2021

The Honorable John C. Coughenour
United States District Judge
United States Courthouse
700 Stewart St., #16229
Seattle, Washington 98101

Re:  United States v. Mukund Mohan, No. CR21-00041JCC
Dear Judge Coughenour:

I came to the United States of America (USA) in August of 1993 as a student to pursue my Master of Science in Computer Science at University of Maryland, Baltimore County. Before that, I lived and studied in India for 21 years, completing my undergraduate studies in Computer Science at the University of Mysore.

I pursued my career in the San Jose area, working for organizations such as Cisco Systems and Mercury Interactive (acquired by Hewlett Packard). After becoming a naturalized citizen of the United States (late 2000's), my family and I returned to India for 6 years to be with our parents. We returned to the United States in 2014, when I worked for Microsoft and then at Amazon. Until recently I was a senior executive at an eCommerce company that is based in Canada.

I owe a lot of my life, my freedom and position in life to the people and institutions in the USA.

Which is why I am horrified that I cheated the people paying taxes, hardworking small business owners, bankers, and the government by acquiring forgivable PPP loans falsely during the Covid crisis. My actions are unconscionable. Since the day of my arrest warrant there has not been a single day that I have not regretted and revisited my actions. I hurt the people that helped me. The same people who willingly took into their fold a young student, gave me opportunities to grow and thrive. I betrayed them. They have a right to be disappointed, angry, and disgusted by my actions.

If you look at my history and prior actions, nothing suggests that this should have happened. I believe I have a good moral compass, but I failed myself, my family, friends, colleagues, acquaintances, and people who trusted me. Many will be unable to forgive me for my actions. I understand that.

To my family who have endured the social stigma and pain from their classmates and colleagues, I deeply apologize. For most of them I was a role model, and nothing pains me more than to see them so disappointed in me. The impact of my actions on them have been more than on anyone else and I am deeply sorry they had to endure public humiliation. My family has been a source of my strength through this crisis, and I owe a lot of gratitude to them for helping me forge the path ahead.

To my many friends from school and college, who have known me for over 30 years, I am sorry that I caused you pain and anguish. Many of you have spent days and weeks questioning "Why would Mukund do this?" and had to endure the humility of knowing me or looking to defend my actions. I apologize to you. I know you had to try to explain this to your kids and family as well, especially since most of your kids know me very well.

To the institutions of the USA including the SBA, which has tried to do help businesses at this time of need, only to be cheated by me, I apologize. Helping businesses was your intent and being distracted by someone who falsified documents keeps you away from your mission. I showed more than an error in judgment. This was a big mistake and I take full responsibility. The fact that I have returned all the loan and not used any of it at all will be of little solace to most people.

Since the complaint and conviction, I have been removed from my position and lost my primary source of income and am unlikely to be employed again. I understand this is the start of the consequences I must face. What gives me hope is that I am seeking help to give back more than I have got.

Mukund Mohan                                                                                          6/8/2021

Over the last year I have sought professional help with experts such as Lonnie Kaman (licensed psychologist) to address the issues that led me to this path - envy of successful entrepreneurs and constant comparison to other's success. These discussions along with my reflection of the sequence of events that led to these actions are what I am working daily with gratitude journaling, thoughtful writing and realigning my moral compass to reflect helping others.

I believe there are multiple ways I can help and make good on the promise to be a force of good. I have started on some of them including providing free education to help young students affected by Covid. I am helping them invest in their future by learning about the financial markets and providing them free analysis and information on Twitter and my blog. Over the last 9 months I had the opportunity to connect with over 40,000 young and first-time investors and share the basics of analyzing companies, investing in the stock market, and developing an investment thesis and portfolio.

It gives me immense joy when I see their positive responses and messages to my teaching and content. A big purpose of my life going forward, is to help young professionals learn and invest for their future. Investment literacy is what I have chosen to shed light on. Since this is not taught in the formal education system, I find it rewarding to share my experiences gathered over the years.

Through my writing, speaking, and sharing, I hope to help hundreds of other avoid taking shortcuts to achieve their goals Shedding light on not going over the proverbial line even for small minor infractions will be the road to being truthful and honest throughout their life.

Mukund June 8th, 2021

# **EXHIBIT C**

## CHARACTER REFERENCE LETTERS

<u>No</u>.        <u>Name</u>

C-1        Vinita Ananth

C-2        Thrisha Mohan

C-3        Narayan Mohan

C-4        Rashmi Mohan

C-5        Bharadwaj Ananthan

C-6        Ramadorai Arunkumar

C-7        Manjunath Bangalore

C-8        Mohan Bulusu

C-9        Prasana Iyengar

C-10      Jayashree Jagannath

C-11      Govindarajan Jayanth

C-12      Sunil Jose

C-13      Sreekanth Kannepalli

C-14      Radhica Kanniganti

C-15      Raghuram Madabushi

C-16      Rakesh Mahajan

C-17      Satish Mugulavalli

C-18      Radhika Mukhija

C-19      Godwin Pavamani

C-20      Amaresh Ramaswamy

C-21      Bhargava Vadapalli

C-22      Arun Vaidyanath

C-23      Arthi Vijayaraghavan

*United States v. Mukund Mohan*
No. CR21-041JCC

# Attachment C-1

My name is Vinita Ananth and I'm writing this character reference letter for my **husband** Mukund Mohan. **We have been married and together for 25 years** and in this span we have lived in the same house, and have known, and seen each other from **all aspects from personal to social to professional**. I met Mukund in 1996 when we attended engineering school while working towards our bachelor's degrees. Through the years, we married, set up our residence, had children and traveled the world. We lived in the Silicon Valley, California for 12 years, subsequently in Bangalore (the Silicon Valley of India) for 6 years, and have been residing in Clyde Hill, WA for the past 7 years. In the early 2000s, we had 2 beautiful biological children Thrisha (19) and Rishab Mohan (16), and a decade after our marriage, adopted our lovely twin girls Tara and Richa Mohan (now 15) from an orphanage in India.

Having known Mukund for a quarter of a century, I'm entirely aware of the character of my husband, Mukund has always been a person of high standards, a leader and generous human being.

Being computer engineers, our careers frequently crossed paths(at HP, at Microsoft, etc.), and I've had front row seats to witnessing his professional journey. The Mukund I know has **always sought to share technical practices, deep knowledge, and industry advancements** to engineers, technologists, marketeers, entrepreneurs through education, sharing what he had **learned openly, selflessly, and supported people in the community** who were in need, and **most often without a fee**. His vehicles of sharing were myriad – *from teaching STEM at schools, teaching computer network classes in community colleges, or blogging on his own site ([www.bestengagingcommunities.com](www.bestengagingcommunities.com)), speaking at Industry conferences or in the more recent years through Twitter.* Throughout his career one theme has consistently emerged, **Mukund was beyond generous with sharing his knowledge – if he learned something new, he was eager to give it back to the universe and democratize that knowledge**.

Outside professional circles, in personal settings, he has been **a model and caring husband, and father to our 4 kids**, a favorite brother, a dutiful son/son-

in-law and friend to hundreds if not thousands. He is the adoring parent who checks in three to four times a day, making sure the kids had their meals for the day and is often found in the kitchen preparing our children's favorite dishes. On weekends, we enjoyed having friends and family over, Mukund has always been a **warm, high-energy with a great sense of humor, fun, effusive, and generous host** cooking meals, cleaning up, entertaining, and helping our friends and their children by being a great listener and supporter. He had consistently donated blood to blood banks. He has always devoted his life to the well being of all those who touched him. There isn't a single instance where people can raise their eyebrows or a finger and, on the contrary, have deeply **admired him** as someone who **was simple (not materialistic), kind and a person who strived to bring peace around him**.

Mukund has been a person of high moral and ethics in his all life. He has **devoted his life for the wellbeing of others** and for those are around him, which I have always witnessed from him in the multiple occasions of such situations. The news of the criminal proceedings against him came just like a *tremendous shock* to me and my family, since it is something which can never be expected from a man of such high regard and conduct, and one who cares so deeply for so many.

I'm fully aware of the charges and his admission of guilt, yet I'm pledging here with my words towards his character. While I had no awareness prior to the event, retrospectively I have come to learn what may have led to his actions. The Cares Act had just been rolled out, and Mukund had been hearing anecdotally about startups who were receiving approvals for the loans notwithstanding when their businesses were not adversely affected by COVID but in anticipation of hardship in the future. Mukund had several startup ideas/engineering projects in flight, with complete business plans and offshore development in progress, *he had worked very hard until that point and was anxious for ways to make incremental progress on them*. **Mukund's brain is multi-threaded**, I've always known him to maintain a list of not just a few but several business ideas, entirely aware that 90% of startups fail. *Ill-advised he sought to obtain PPP loans* that would **help him continue to build and develop the products** to the tune of what may be Series A funds. The simplicity of paperwork facilitated repetition until he obtained the amount which could help move his products from pre-prototype to minimum viable product. Mukund in his circles is known to be a speed hare and a rapid

thinker, in the past this trait has helped advert several adverse emergency situations.

I can only speculate at this time, but it is almost impossible believe the Mukund I know would have kept the funds without returning them to the United States Government – that is the ordinary and common nature of Loans. The circumstances that occurred to Mukund were extraordinary and *his actions under the influence during the fated one month at the peak of COVID (a period of unreasonable fear, doubt and uncertainty for majority of the world)* was unprecedented and confounding, which regrettably led to a series of actions that are so far from who Mukund has been for the past 49 years.

*Mukund, in my humble opinion, is not defined by this mistake, and is far more than it.*

I just hope that this of my character reference letter would give you a better idea to assess his character and take your decision accordingly. I'm confident that Mukund will continue to give unconditionally to the world. I'm truly thankful for the opportunity to share, and to you for taking some time out to read this letter.

Thank you.

Sincerely,

Vinita Ananth (Mukund's wife)

# Attachment C-2

My name is Thrisha Mohan, and I am writing a character reference for my father, Mukund Mohan. I am nineteen years old and have known my father all my life as he and I have lived together until I enrolled in American University last year.

Since my childhood, my dad has instilled in me the values of service and hardwork. When we lived in Bangalore, India, I never thought much of the long hours that my father worked, or the plethora of meetings and calls he had. In retrospect, those meetings and events were often spent voluntarily helping students and young professionals alike develop technical skills, functional expertise and build relationships with others in their domain to begin or further their career. As a ten-year-old, I was often unaware and oblivious to his impact, nonetheless on the few occasions I was able to see what a meaningful and helpful presence he was in the lives of hundreds of people, many of whom he did not even know personally. Once when my dad and I were walking to a neighborhood grocery store, a man, whom I had never met, stopped his car to thank my dad for his help and support in his career. My dad had mentored him over Twitter just as he had done for many people through social media, he never imagined he would personally meet anyone in person. He always believed in helping people regardless of his personal familiarity with them, because he believes that everyone deserves a helping hand. In his personal and professional spheres, he carried these values and aimed to build connections and relationships that would benefit as many humans as possible.

Back in the US, as an eighth grader at Chinook Middle School, my dad volunteered at our school to help sixth and seventh students who were struggling with math and science classes. He was not volunteering in my classroom for the benefit of my personal education; he helped students who needed the additional support. I did not actually realize he was volunteering until a month or so into his work because he was not loud or boastful about his service, on the contrary he did what he felt was right without the need for acknowledgement.

Throughout my life, my dad has supported me and raised me to be diligent and work hard towards my goals. He was able to demonstrate this to me both through his actions and words, always encouraging me to explore the range of opportunities that were available in the United States, a country in which "the sky's the limit if you work hard." My passions steered me towards Politics, and his support led me to serve my community and engage with its institutions. He constantly encouraged me to question my current beliefs and learn more in order to understand the most significant problems that needed to be addressed. His guidance influenced my decision to work in Public Sector and ensure that equity is at the center of decision-making in Washington. Over the past three years, he motivated me to work in political campaigns in Washington state and fight for the rights and resources of our most vulnerable communities. I hope to continue to do so for the rest of my life.

Despite my father's admirable traits, selfless nature, and commendable actions, he committed a big mistake, he is only human. Though it is part of human nature to have lapses of judgment, the ideas of service and community have been clearly a large part of my dad's life. While the aspects of his life that I list in this letter do not absolve him of responsibility, they show a pattern of compassion, altruism, and kindness that is strikingly genuine and has bettered hundreds of lives.

Thank you for your time and consideration in reading this letter.

Sincerely,

Thrisha Mohan

# Attachment C-3

*Narayan Mohan.*

6, *SWAGATHAM,*
16/25,*Binny Crescent  Road,*
*Benson Town,*
*Bangalore. 560 046.*

*Cell: 9483508359*

*20* ᵀᴴ *JUNE 2021*

*The Honorable John C. Coughenour*
*United States District Judge*
*United States Courthouse*
*700 Stewart St., #16229*
*Seattle, Washington 98101*

*Re: United States v. Mukund Mohan, No. CR21-00041JCC*

*Judge Coughenour:*

*I am Mukund's father, and reside in Bangalore, India. I am 74 years old. I am a businessman and an entrepreneur. I was born in the city of Bombay and lived there for over 30 years before we moved to Bangalore in 1982. My work at a large multi-national company, Wipro brought us to Bangalore. My wife, who passed away in 2013, and I had 2 kids — Mukund and his younger sister Rashmi.*

*We raised our kids to be grounded, with strong moral values and a deep sense of helping others as much as you can. I believe if you do good deeds, it will come back to help you later in life. We are a deeply religious household and believe that the supreme being has a plan for us all.*
*From when he was born, Mukund was a thoughtful and affectionate boy. The earliest memories I have of him were staying up late when I would be back home from a long day of work to ask if I had something to eat. Mukund was close to us and always had many friends. He never had trouble making new friends or inviting them over home for dinner or to study together. He is close to his sister and very protective of her as well. Both adults and children find him to be fun, with simple tastes and humble.*

*Mukund had always been a bright student and committed learner. While not very athletic, he still participated in swimming and cricket and used to cycle to school daily. Even to his day, he does not eat meat, has never drank alcohol or coffee or smoked in his life. He is disciplined and consistent.*

*After completing his undergraduate degree in India, I recommended he study Computer Science in the US to further his career. He started working in the US in 1994 and had been there until 2008. I have been watching his growth for over 48 years now and I am proud of what he has accomplished, both in his professional and personal life.*
*No words can express my anguish when I learned about his actions on July 2020. While we were all struggling with the Covid, I found his actions to be wrong. He had a serious error in judgement. The initial shock was replaced by a discussion with him about what were the circumstances that led to his applications for several loans. I was especially curious as to why, someone who did not need the money at all would apply for these loans. During my interactions with him since, I gather the combination of the process being simple, his desire to take shortcuts and further the growth of his many ideas and businesses caused his downfall.*

*I am still constantly praying for him daily, weekly and every opportunity I get. I find in prayer my ability to forgive him for*

his mistakes. My belief in the almighty, the faith in giving people a fair second chance, leads me to believe he can rectify his mistakes and lead a purposeful life. His actions, achievements and morals will be scrutinized even further going forward by all, and he will have to live with the consequences of his actions.

I would request you to kindly take this letter into consideration during your judgement. I assure you that having known him the most in the world, during his stay here, he is remorseful, wanting to make good on his actions and willing to commit to be a role model going forward.

I do appreciate your time reading this letter

Sincerely

NARAYAN MOHAN
Nmohan01@gmail.com

# Attachment C-4

The Honorable John C. Coughenour

United States District Judge

United States Courthouse

700 Stewart St., #16229

Seattle, Washington 98101


Re:  United States v. Mukund Mohan, No. CR21-00041JCC

Dear Judge Coughenour:

I am Mukund's only sibling and have known him for the 44 years of my life.  He has been my older sibling, my friend, my caretaker, mentor and advisor through every big and small decision.

Through my growing years and our years together as a family I have grown to realize what a special human being he is.  We have been lucky enough to live within a 10 minute drive of each other's homes for a significant portion of our lives.  He has been an integral part of my children's lives, supporting and guiding them as only an uncle can.

Mukund and I grew up surrounded by an extended family with very close bonds.  Our parents always taught us the value of hard work and togetherness.  As siblings, we hardly ever fought because of how accommodating and loving he was. At the age of 7, when my parents traveled abroad, we lived with cousins for a period of 4 weeks.  I still remember 11 year old Mukund taking his responsibility of caring for me very seriously and never letting me be lonely.  Even during the summer holidays, he always used his time wisely - selling local produce from a friend's farm, building marketing campaigns for an uncle's detergent product and inventing creative games to keep all the younger cousins entertained.  He was loved by everyone because he didn't do any of this for an allowance, but just out of his own love to be productive and engaged with his community.

Mukund worked very hard to create opportunities for himself.  His professional success came from immense discipline, hard work, thirst for learning and a genuine passion for his work.  But what is most commendable is that he always carried people along with him as he grew.  I know of 2 specific incidents where his intuition and ability to create opportunities for others transformed the lives of a cousin and a friend's autistic son.

In the first case, our cousin Santosh had not been able to complete his education and was struggling to find his identity.  This had a deep negative impact on Santosh and his parents.  Mukund gave him a job, guided and mentored him through it and also gave him a place to live for a few months until Santosh was able to land on his own two feet.  Today, Santosh has a successful career, is married and has two young children.  To say that his life was transformed by the opportunity that Mukund gave him would not be an understatement.

In the second case, Mukund's colleague had an autistic son who was unable to find an internship or higher education opportunities in India. Mukund created a position for the teenager and helped give

him a sense of purpose and accomplishment.  The boy's parents were so grateful for Mukund's ability to generate meaningful opportunities for their son and others in need.

That's the Mukund that I know - one who is thoughtful, generous to a fault and will go out of his way to help others.  His most valuable resource was his time, and he has given countless hours of those speaking to young students, entrepreneurs, sharing both his successes and mistakes.

His and Vinita's decision to adopt their twin daughters in 2012 came as a surprise to most of our family, but one that they were confident about.  They have worked incredibly hard to integrate the children into all our lives and have made us the richer for it.  The twins have transformed into strong, well-adjusted young women - one of whom is an exceptional artist and the other, a great sportsperson. Mukund has an open, nurturing relationship with all four of his children.  He is one of the very few fathers I know who is truly an equal partner and parent.  He is an exceptional cook and has been a role model of industriousness to his children.  He has always always shared the load at home and has managed his career and household responsibilities with alacrity.

Mukund and I have always been close and I have been talking to him almost daily since the incident, and have met him thrice as well.  He is sincerely sorry, apologetic and understands the consequences of his big mistake.  Even from his first phone call to me, he has expressed his deep remorse for his actions, both to me and our father.  I am confident that this will remain a one-off incident for Mukund from which he will learn lessons that he will use from here onwards.  He will not only improve his life, but I am sure he will help others make better choices as well.  Our entire family loves Mukund and we will continue to support him and wish him the best outcome for this case.


Sincerely,

*Rashmi Mohan*


Rashmi Mohan

Email address: r_rashmi@yahoo.com

# Attachment C-5

**Bharadwaj Ananthan**
5112 NW 173rd Place
Portland OR 97229
577-377-0198
b_ananthan@yahoo.com

May 25, 2021

The Honorable John C. Coughenour
United States District Judge
United States Courthouse
700 Stewart St., #16229
Seattle, Washington 98101

Re:  United States v. Mukund Mohan, No. CR21-00041JCC

Dear Judge Coughenour:

Mukund is my cousin brother and I have known him all my life of 43 years. My
earliest memories of him were when we used to visit him and his younger sister in
Bengaluru during my summer vacations.  I felt very special with them and my aunt
(his mother), who showered me with love, affection, and memorable gifts (one of
them being the Monopoly game, which became a prized possession for many years).
On his way to graduate school in Maryland in the early 90's, he stopped by our home
in Mumbai and shared how much he was looking forward to expanding his technical
skills and world view in the US.

When I moved to the US in the 2000's, I came to know of Mukund as the super high
achiever in the family. He had been involved in many tech startups in the Bay Area
and was considered a model for many in that space. I had a friend from college, who
(unbeknownst to me) had connected with Mukund and gotten mentorship from him
on his tech start-up. Through all of this, I found Mukund to remain very grounded
and his affection for me never changed. In 2004, he made a special trip to attend my
wedding in India, which meant a lot to me.

In 2013, when he moved back to the US we started meeting much more often as he
was in Seattle and we were in Portland. As with me, he has developed a special bond
with my son, Rajiv. Rajiv loves and adores his uncle and is always excited to be with
him. We also grew very close to his entire family, including his wife Vinita and their
4 kids. They adopted 2 of their kids (my 2 nieces Raji and Mahi) in 2004. Adoption is
not very common in our culture and for that I have developed a very high regard for
their family. Even though Mukund and Vinita had very successful careers, they
remained very humble and unassuming.

When I found out about the issue that he was charged with in 2020, I was deeply
saddened and frankly shocked. As I have thought more about it, I have concluded

that it was a one-off mistake and does not take away from all his accomplishments (professional and personal). In the last year, we have talked and met several times and I can say without a doubt that he deeply regrets his actions and would give-up anything to change it.

In closing I'd urge you to consider his overall contributions (to his family, society) and not just his singular action in 2020. His wife and his 4 kids need him at this time, and I would request you to consider that.

Sincerely,

**Bharadwaj Ananthan**

# Attachment C-6

My name is Ramadorai Arunkumar, and I am writing a character reference later for Mukund Mohan, my brother-in-law, whom I have known for about 26 years. I work as Principal Technologist and computer engineer for Wind River Systems, a global leader in delivering software for intelligent connected systems for over 2 billion products. and I reside in Bolingbrook, Chicago. . I am married to Sushmita, who is the elder sister of Vinita Ananth, Mukund's wife.

During the period I have known Mukund, I have interacted with him many times. Although all of them were on a personal basis, those interactions typically involved a lot of conversations about Mukund's passion for innovation, startup and business ideas. That is because that is Mukund's true life blood, his pulse.

From the very first time I met him, I have been most impressed by Mukund's breadth of knowledge, his maturity, (he was in his twenties when I first met him), and in particular, his never-ending source of energy and ideas. I have also been struck by his simplicity and indifference to aspects of wealth, glitz or glamour.. In my mind, it seemed *what Mukund valued most is to make a difference in the world by success in businesses based on his startup ideas, and/or by helping others realize their startup dreams*. To me, this is a very admirable trait.

My conversations with Mukund over the years frequently revolved around him openly sharing the startup ideas he was currently thinking about or pursuing. Most of these ideas were in the so-called early stage for him to perhaps realize later when the time is right, while some had advanced beyond that. However, that did not mean Mukund did not do his due-diligence on any of them. It seemed like every idea was treated with same level of utmost passion and respect. It appeared to me that he always dug deep , reading books and articles, and gathering as

much information about that particular idea's market.

In fact the level of passion he put into so many ideas always amazed and even overwhelmed me!
Moreover he was never really secretive about his ideas, freely discussing them and bouncing off to others. *The ideas he discussed with me were legitimate ideas, and not short cut "get rich" schemes. None of them seemed fake or dubious.* For a couple of them, I know he had hired folks to create technical demos etc., which I remember him showing one of these to me while at Seattle during a family Thanksgiving get-together. For one of his ideas, I even helped a bit with some technical research (many years ago, for a few weeks). What also struck me was that despite him coming from the world of technology and computers and software, his ideas were not necessarily confined to compute technology. I know he has pursued ideas in a completely different world with same amount of passion - e.g. Bakery, Restaurant etc.

*I mention the above to offer why I feel that this "never-ending, never-pausing idea machine" inside Mukund is the genuine article*. I remember my conversations with him while he was working on startup incubators (in Bangalore, India, and later in Seattle) - it seemed to me that he absolutely loved his role of advising and mentoring others - particularly about evolving startup-ideas. The whole concept of starting with an idea and realizing a business out of that seemed to be so such a powerful attractive force within him even if it is not his idea or his success at the end of that journey! *It showed to me, his willingness to make a difference in the lives of other people*.

This passion to dig-deep or show high enthusiasm about something was not limited to business ideas. Mukund also showed this even during our family gatherings - playing a utmost wonderful host. He loved to cook, bake and serve to all of us (about 20). He showed genuine enthusiasm and love interacting with all members of our family.

Also as I say in the beginning above, Mukund did not

flash his wealth around, neither was he interested in personal luxuries. He wore simple clothes. . I also heard that while he was at Bangalore, when he was in a fairly influential executive position in Microsoft, he still took public transportation. It was just Mukund being Mukund. *I believe that for Mukund, personal gain from wealth and money was never a priority*. Although he certainly aspired to start businesses and have them become successful (something that he breathed 24/7), *I believe Mukund cared more about the validation about his business ideas and making a difference in the world, rather than the monetary benefit to him from it.* To me, it seemed, it was not about the money and wealth, and from a perspective of a non-entrepreneur like me, it is intriguing and amazing. It is most certainly, another admirable trait.

Given all I know about Mukund, it was indeed a shock to learn about the circumstances that has led to him being charged. This certainly was not the Mukund I have known and interacted with. However, I am also aware of the details of the charges as well as his admission of guilt. Based on what I know of Mukund, which I have outlined above, I truly believe, that although misguided in intent and execution to obtain the PPP loans, his intention would not be to use then for personal or nefarious means. I do believe they would be to only fund his idea machine. It did seem like he always had too many ideas at any time that he wanted executed, which requires time, people and money. In the start-up world that Mukund knows intimately, that involves loans and venture funding, and I believe that this along with his drive to execute ideas must have somehow led Mukund to the ill-advised decision to procure PPP funding for this purpose.

In my opinion, Mukund is a good person with a genuine intent to make a difference in the world via his start-up ideas, who has committed a mistake – but in trying to realize that intent. I hope this reference letter shines a light on that, and I plead that you take this into account and offer leniency regarding his sentence. Based on what I know about Mukund as a

person, I sincerely believe that he fully realizes the damage this event has cost him and his family, and he would be willing to make amends by helping others or society. As I have outlined above, it is part of his helping nature.

Thank You.

Sincerely
Ramadorai Arunkumar. (Mukund's Brother-In-Law)

RAMADORAI ARUNKUMAR
JUNE 21, 2021

# Attachment C-7

The Honorable John C. Coughenour

United States District Judge

United States Courthouse

700 Stewart St., #16229

Seattle, Washington 98101


Re:  United States v. Mukund Mohan, No. CR21-00041JCC

Dear honorable Judge Mr. Coughenour,

I have known Mukund since 1990 when I first crossed paths with him during my sophomore year of Undergrad School back in Mysore, India pursuing Bachelor's in Engineering at the time. It was really hard to miss him with his incredible energy and vivacious nature.

He certainly had a charming personality about him that drew people together, both students and faculty alike. He was always helpful to those around him and put people at ease. He would often take initiative to coordinate class excursions or other group events that he really came to be known for over time. He was a very popular guy around the Campus, and I'd be surprised if there was any kid that wouldn't know him over the years.

After we graduated college in 1993, we met again in California in the late 90's when we both lived in the Bay area for over ten years within a few miles of each other. Our families hung out together quite often, and with both of our kids about the same age, that gave us more opportunities to do so. Mukund interacted with the kids in his inimitable "fun" goofy way, and the kids would always have a blast around him. Both my son and daughter adored Mukund and would look forward to meeting him and his family.

Mukund has always been the life of any party, putting everybody at ease and engaging them to participate in group games and activities, much of which he often put-together himself that brought people together. He has always been fun to hang out with, and people that I never seen dance before are on the dance floor when Mukund is around, for which his engaging personality is largely a factor.

When Mukund and family returned to India many years ago, Mukund was highly committed to giving back to society to help the under-privileged. Mukund and his wife Vinita adopted twin-girls and provided them a safe, caring and nurturing environment. Knowing how hard and arduous the process of adoption is in India, the manner in which both of them showed commitment and stayed the course, drew a lot of admiration from many in our common circle of friends. Mukund and Vinita accepted the twin girls into their family and treated them no different from two of their own children. I met the girls early on when they were just brought into the family. When I met them again over the past year after a long hiatus, I was pleasantly surprised to see a huge positive change in them. It was nothing short of transformational! They had grown to be confident young girls, incredibly articulate and integrated so beautifully into the family. Mukund and Vinita have been largely responsible for this outcome in creating a loving environment for the twin girls and exposing them to a world of possibilities. I have always known Mukund to be a loving father to all his children besides being just an amazing family man

overall, and the above outcome is a real testament to that. The love and adoration that I see in the children for their Dad is just priceless.

Another significant contribution that he made during his in India was to coach budding Entrepreneurs in India with their start-up journey when an Entrepreneurial wave hit India over a decade ago. He was generous with his time as he invested copious amount of time and effort in providing guidance to umpteen number of early ventures based largely on his own experiences with Startups. I'm certain that many of them owe their successes to his insights and mentorship. It's worth mentioning that he did all of this without any expectations in return.

I have always known Mukund to be incredibly helpful, kind, and a genuinely good person who always looks out for others and the Community at large. I can say without any reservation when I look at his life's trajectory and knowing him personally for a really long time now, that the recent incident with the PPP loans is truly an exception and does not reflect the truly wonderful human being that he is and all his accomplishments till date. Given a second chance, I have no doubt in my mind that Mukund will truly give his everything to make things right again, and then some more. I sincerely appreciate your kind and thoughtful consideration in this regard.


Sincerely,

*Manjunath Bangalore*

Manjunath Bangalore

manjax@gmail.com

June 9, 2021

# Attachment C-8

I'm Mohan Bulusu (54), and I live in Bellevue, WA with my wife Rajani and our two boys, Advaith and Vikhyath. I moved to the state of Washington in 1993 and joined Microsoft as a software engineer, and I have been living in the Bellevue/Redmond area ever since. I currently hold the position of a Group Engineering Manager at Microsoft. Rajani is owner-cum-chef of SkillAtSpice.com, a food delivery service based in Bellevue.

I first met Mukund Mohan in 2015 when I put together and started managing a youth cricket team which included Mukund's son, Rishab, as well as my son Advaith. This was the beginning of a lasting friendship between our families. We had opportunities to meet with one another during local cricket matches, social events hosted by common friends – and we were happy to discover that we had quite a few of them! – and soon, at our respective homes. Mukund would often cook tasty delicacies as we stood around chatting in their kitchen, and we appreciated him for the gentle and loving parent and husband he is. What he never let on to me was that his twin daughters are ones he and Vinita adopted, and rescued from a much less fortunate background. Vinita shared this with Rajani a couple of years ago, who then told me. I was flabbergasted since I had no idea whatsoever of this. At the same time, I felt it completely fit with the kind of people that I found Mukund and Vinita to be.

Mukund became a trusted ally to me as in managing the youth cricket team, as Rishab, Advaith and their teammates played in multiple times to matches and tournaments in and outside the state. Mukund had no particular interest in cricket but that did not stop him from putting his hand up whenever I needed a volunteer to travel with the kids, drive them to matches, be an umpire or even take the field as a substitute. The boys loved Mukund, or "MuMo" as they called him, as much for his athleticism on the field as his delightful sense of humor and his unassuming nature. When we return from a trip, Mukund would provide scrupulous accounting of every penny spent on behalf of the team but absolutely refuse even a partial reimbursement of his own flight and hotel costs. On these trips, Mukund and I would often engage in brainstorming on business ideas, and I was struck by the keen intelligence and creativity that lie behind his lighthearted nature. While we never did business together, Mukund was a valuable guide when Rajani and I decided to set up the Northwest Cricket Academy, a nonprofit for promoting the sport of cricket among youth.

When I heard about Mukund's arrest in July, I was shocked to the core. I struggled to accept the news as real since it was completely incongruous with the person I knew Mukund to be. It took me several days to gather myself and reach out to Mukund with a short message, "Every one of us has made mistakes. There is no place for any of us judging the others. All I know is that you will fight through this ordeal and emerge stronger."

I believe with all my heart that what Mukund did is an aberration. The person I know is decent, honest, caring, intelligent and accomplished. He is not only critical to the well-being of his family, but he also has a lot more to offer to the society. I have seen the steely resolve in him to make amends. I can only hope and pray that he is given the chance to do so. I humbly request the honorable judge to consider this during the sentencing.

Mohan Bulusu
Tuesday, April 27, 2021

# Attachment C-9

**Prasana Iyengar**
988 Redmond Avenue
San Jose, CA 95120
4084213040
prasana.iyengar@gmail.com

April 5, 2021

The Honorable John C. Coughenour
United States District Judge
United States Courthouse
700 Stewart St., #16229
Seattle, Washington 98101

Re:  United States v. Mukund Mohan, No. CR21-00041JCC
Dear Judge Coughenour:

I have known Mukund for almost all of his life, 48 years; he is my cousin on my
Father's side, we grew up together during parts of our childhood in Bombay,
India. Being from the lower-middle class meant we had a lot of sleepovers with
each other since our mothers got along very well. As a younger brother he
was compliant and fun to be around.

Fast forward to our adult lives we reconnected in summer 1993 Santa Clara,
California - Mukund was starting his post-graduate career, and he caught the
eye of the founders at my employer, a software startup called Pretzel Logic
Software - Mukund is one the hardest working engineers i worked with,
PERIOD. His ability to think of applications like evite.com back in 1996 sets him
apart. In the software industry that was almost 5-years ahead of when the
dot-com bubble came to a head. He hasn't slowed down. He's extremely
focused on objectives. I worked on 2 startups with him Interactive Technology
Partners and Amura - experienced it first hand.

As a brother he's dear to me as my own blood brother. The depth of
relationship has deepened as the years have gone by. He's been there
always. From the birth of our first child - for which he was the one my wife,
Rohini trusted completely to be with her from the moment her water broke till
the time I could at the hospital some 2 hours later due to traffic; that trust has
been nurtured and taken strong roots with the compassion he's shown to his
nieces and Rohini. My daughters (now 25 and 22 years old) reaction when
they learned of his current predicament, "He'll always be our Mukund
Chittappa(uncle), nothing changes". The foundation of their relationship is the
loyal support he's nurtured them with - cheerleading for them from their
earliest days to be the best at anything they were pursuing.

He's made a mistake this time, we live in a society of laws and so there are consequences. If the point of the consequence is a lesson and repair - it seems to me that has been served in the time since this case came to light. I know he's taken the lesson to heart, and there's no risk of a repeat - he's no risk to society.

In closing I'd urge you to give him a fair consideration, not a harsh one. This I say as not Mukund's brother, but just as a member of society, we want to aim for correction not a broken citizen.

Sincerely,

Prasana Iyengar

# Attachment C-10

My name is Jayashree Jagannath and I'm writing this character reference letter for my **brother-in-law Mukund Mohan**. I have known Mukund since 1996 when my cousin sister Vinita Ananth got married to him. I work as a Senior Manager, Security Engineering at Verana Health, an Healthcare Data Analytics company that is aiming to make clinical trials efficient and easily accessible based on real world evidence.

Mukund is a serial entrepreneur and his brain is filled with a plethora of ideas. He is very passionate about his ideas and he is ready to put in the required hard work to ensure that he can execute on those ideas and bring them to fruition. He is a voracious reader and when he hones on an idea he spends the required time to do due diligence about the feasibility of the idea. He is very quickly able to piece together a big picture to form a vision of how he wants to move the idea forward. When he talks about his ideas you can see a child-like excitement while he talks about the possibilities in ways this idea could solve a problem. **His strong passion to make a difference in the world of technology and business is what you see in this child-like excitement.**

He is an extremely sharp, fast thinker and ahead of his times. **There have been instances where he has come up with ideas that have sprung up 2-3 years later as a solid business trend. That shows a mark of a true visionary.** As an entrepreneur one has to face a lot of rejection. Many times people do not want to believe in your ideas and it is hard to keep the spirit to move things forward when things are going tough. **I have seen Mukund through one of those times and he has the tenacity to move forward with something even if no one around him believes in it. I have never seen him bogged down by rejections or if an idea fails. He always finds a way to get up and move on.**

In the end his eventual goal is to make a substantial difference in this world through his passion in business and technology. At it's core it is the people he can make a difference to and what he can do to improve their quality of life. Be it a simple or a complex idea, it didn't matter, **the goal was to help people and make their lives better. It was his way of helping move the ball forward in the world of technology and business and to achieve something that will eventually help people. To me this requires not only tremendous tenacity and courage to achieve this goal but also a sense of concern for people and what can he do to make their lives better.**

We are a very close-knit family and I have had the chance to interact closely with Mukund since we used to see each other a lot during holidays and vacations. For a period of 2 years Mukund and Vinita and us (my husband Sridhar and myself)  lived in the Bay area at the same time and we had a chance to spend more time together since we were able to meet more often. This gave me the opportunity to interact with him many times about my professional work and many times about how it is to work in a startup and what it takes to start a company. Within a couple of conversations you could easily figure out that this is a guy who loves to start companies and in the process help people. For me personally he has referred me to folks professionally, given me ideas on how to take my career forward and he has done all this without expecting anything in

return. **He sees a need and he thinks he can help fulfill it and he will do it sometimes without you asking for it.**

Mukund and Vinita spent a lot of time with my father when he was in India. They were a big support for my dad when he was staying alone for 5 years. They stayed with him for a couple of months and after they moved to their own place they would visit him often to ensure he was doing fine. In a way it was a big relief that my dad had someone close there in case anything happened and for that I am super thankful to both Mukund and Vinita.

My father had great admiration for Mukund. He saw him closely when Mukund stayed with him. He told me how Mukund was so good at taking care of his kids. He (Mukund) would get up at 4:00 AM and take his kids and my cousin for a full workout before they started their day. **This was his way of ensuring his kids understood the value of leading a disciplined and a healthy lifestyle. He knew that this was an important life skill to instill early on in his kids.**

**When Mukund and Vinita were in India they did a very noble cause of adopting these adorable 6 year old twin girls from India. To all of us in the family that was one of the most admirable and selfless acts.** He treated them as his own kids and showered them with a lot of love and opportunities and till date he does that. He guides them and helps them in their studies. He pushes them to be self-sufficient and independent and most of all encourages them to follow what they are passionate about. This is what he has done his whole life "followed his passion" and he wishes and encourages them to do the same.

**Mukund is a family man at heart.** He loves to interact with kids and my kids adore him. He will hang out with them, play with them, talk to them, make fun and create a super fun environment for not just the kids but all of us. **It is just fun to be around him. He shows a genuineness in his affection and will ensure that everyone is included in his fun. He will go out of his way to help anyone. This is not just family but anyone whom he does not even know.**

Mukund and Vinita were one of the few family members I had when I first moved to the Bay Area and his mom was visiting from India. All of them came to one of the family functions and started helping out without us even asking for help. They saw the need and decided to just help out. **What struck me that day was the similarity in how his mom and him helped even without asking and without expecting anything in return. He gets this quality from his mother.** His mother would come to any place and make herself comfortable and help around without any qualms. She would quietly do the work and move on. I witnessed that in one of our family functions. **There is a strong sense of selflessness that leads them (Mukund and his mother) to do that and it is the same quality that Mukund displays in all aspects of his life.**

Mukund is a very un-complicated and simple guy. He is a very approachable person and that's why a lot of times people come to him for mentorship or advice or help. He has been very successful in his life but not once has he ever talked about his personal achievements or wealth. He is someone who can adjust anywhere and in any situation. He can sleep on the floor

and adjust with whatever is available at that point in time. Even though he was very successful very early on in his career he never let it be the topic of conversation. His being successful was just a result of what he really wanted to do. His personal achievement, gain and wealth was never really a priority for him. He was more about following his passion and doing what he loved to do and that was making a difference in his world with his ideas. The monetary benefits from it was just a consequence of what he was doing. **What was more important to him was that idea would make a difference to people's lives.**

Many folks in the Bay Area and other tech cities want to be entrepreneurs because it sounds very cool to be an entrepreneur. **But for Mukund it is his passion that makes him a true entrepreneur.** Like I said before it takes a different type of personality to be an entrepreneur and money cannot be the focus if you want to be a successful entrepreneur. **He thinks a lot of times from his heart and brings in the compassion needed to nurture the idea. To be a successful entrepreneur you need a personality that has immense courage, tenacity, is detailed oriented, adaptability, charismatic and a sense of self belief to be successful and Mukund has displayed these qualities time and again in every single project that he has taken up over the past 25 years I have known him.**

It was an immense shock to all of us in the family when we got to know about Mukund's arrest. Given how he is as a person I could have never imagined him getting himself into this type of a situation. This was definitely not the person I or my family knew and we are still reeling from this shock. We are all fully aware of the charges he is facing today and his admission of guilt. From what I know about Mukund it was absolutely not his intent to use this money for any personal gains. His only intent was to use this money to execute on the plethora of ideas he has in his mind. **Mukund has time and again seen that you need to raise money to be able to execute on ideas and he thought he could use this money to do exactly that.** And that is the only reason that drove him to apply for the PPP loans.

**Mukund has a number of admirable traits and above all he is a generous human being.** He has helped a lot of people without expecting anything from them. He only knows how to follow his passion and his passion is helping people in whichever way he can (through offering jobs in his startup , to mentoring people to become a better version of themselves or by just connecting you with someone he knows and thinks you can benefit from). **He is very dear to our family and has always made us feel part of his family when he is with us.** To me by relation he is my brother-in-law but in reality he treats me more like his little sister. **His simplicity and his ability to be approachable by anyone is what makes him a unique and caring individual inspite of his accomplishments.** I really hope this letter gives you a sense of the type of person Mukund actually is. And I hope you take all of this into account and offer leniency with respect to his sentence. **Over the past year we have seen Mukund painfully realize the magnitude of his actions and the damage caused to his family who are very dear to him and he would do anything to rectify or change this by giving back to the community.** This is what he has always done and this is what he will continue to do. Everyone deserves a second chance and I really hope he gets one.

Thank you,

Sincerely

*Jayashree*

Jayashree Jagannath (Mukund's Sister-in-Law)

# Attachment C-11

May 26, 2021

The Honorable John C. Coughenour
United States District Judge
United States Courthouse
700 Stewart St., #16229
Seattle, Washington 98101

Re:  United States v. Mukund Mohan, No. CR21-00041JCC

Dear Judge Coughenour:

I am Mukund's cousin on his dad's side and am older than him by four years. I have
known Mukund since he stepped into his first year of engineering college, a bright,
young, modest student with no bad habits, very good character, very mature in his
thoughts on any topic, very respectful of others, and working extremely hard to
graduate with a bachelor's degree in computer science.

While I, one among his thousands of friends and relatives, have seen him act as a
mature, helpful, decent citizen and doting father and husband, offering unwavering
help and guidance to many throughout his adult life, I know that this single incident
leading up to this case must surely have been a mortifying experience to him and his
family. One that he has told me that he deeply regrets and had immediately made
the fullest reparations early on. Knowing him as I do, not only will he never make
such a mistake again but also use the hard lessons learnt to guide and mentor
others in avoiding such pitfalls.

He came to US as a post-grad student before I did, and we all immediately saw how
he was holding his own, not giving in to any temptations and saying and doing the
right things. When I got married and came to US on work-visa with my wife,
Mukund quickly found my wife a summer training course, that soon built her
confidence and got her a job. Along the way in his 27+ years in the US, I have seen
him courageously build startups, help many get jobs, participate in philanthropic
activities and be a mentor to many, such that wherever he goes, his beneficiaries
and his social circle love and respect him for changing their lives to the better.

His (and his wife of 25 years, Vinita's) willingness to come forward to help and
guide, know no limits. They are raising four beautiful children, two of them twin girls
adopted at age 5, with great love and care, helping build a better society.

I appeal to your good self to judge him with kindness and leniency as much as you can, for the one honest mistake of his life, otherwise filled with the best behavior in society and citizenship.

Thank you.

Yours Sincerely,

Govindarajan Jayanth
Email: govindjayanth@gmail.com
Elk Grove, CA

# Attachment C-12

Dated: 29th June 2021

The Honorable John C. Coughenour
United States District Judge
United States Courthouse
700 Stewart St., #16229
Seattle, Washington 98101

Re:  United States v. Mukund Mohan, No. CR21-00041JCC

Dear Judge Coughenour:

I have been Mukund's friend and classmate since middle school in India. I have known him for over 37 years as a close friend, classmate and we lived in the same neighborhood as well in Bangalore INDIA.

Mukund has been a loyal friend, always helpful and a trusted individual to me and many of our classmates who still talk every day digitally.

Reminiscing on one occasion when I wanted Mukund's assistance in setting up my startup on Hydrobloom a hydroponics venture, Mukund most gladly gave his time and connect to give it the initial structure, He has been our go to person for most of us both professionally and personally always ready, ever enthusiastic to help / assist us in any way possible.  Blessed and a lifetime friend that I have.

Even after he moved to the United States, he kept in touch with me and our friends via email and messaging. He would make it a point to visit us and inquire about our families every time he visited India as well. He is a family man, and our entire graduating class is rooting for him to get through this situation.

I was thrilled to see him and his family again when they moved to India in 2008 and saw the new additions to his family with the twin girls they adopted. Since I have twins as well, we bonded and commiserated even more.

I have been talking to him over the last few months and believe he is sincerely sorry, apologetic and understands the consequences of his big mistake. While I cannot explain why he did this, he will be judged by me and my fellow classmates on his 37-year history of being a faithful friend, a good human, a fun person to hang out with and a guy who deserves a second change.

I would request you to please take my recommendation of Mukund as a sincere request to pardon his sentence to be reasonable, fair, and just. He has done better in his 48 years for all his friends like me than bad in the few days or weeks this incident occurred.

Sincerely,

*Sunil Jose*

Sunil Jose

suniljose@hydrobloom.in

# Attachment C-13

The Honorable John C. Coughenour

United States District Judge

United States Courthouse

700 Stewart St., #16229

Seattle, Washington 98101

Re:  United States v. Mukund Mohan, No. CR21-00041JCC

Dear Judge Coughenour:

I have been Mukund's friend since 2014. We got connected over cricket and have remained friends ever since.

Mukund has been a loyal friend, always helpful and a trusted individual to me.

Once at time of need, Mukund shared his apartment with me and my family when we had to visit Vancouver on a visa visit. He opened the doors for his apartment without hesitating for a second. The trip was important for me and having a house to live in helped me and my family a lot.

It is always a pleasure to meet Mukund and his family. He and his wife are very lovely people to have around. His son gets along with my son very well while his twins love playing with my daughter. If we weren't told by others, we wouldn't have believed that their twins were adopted. They took care of them even better than their own.

I have been talking to him over the last few months and believe he is sincerely sorry, apologetic and understands the consequences of his big mistake. While I cannot explain why he did this, he will be judged by me for being a faithful friend, a good human, a fun person to hang out with and a guy who deserves a second change.

I would request you to please take my recommendation of Mukund as a sincere request to pardon his sentence to be reasonable, fair, and just. He has done better in his 48 years for all his friends like me than bad in the few days or weeks this incident occurred.

Sincerely,

Sreekanth Kannepalli

Email address: meetsreekanth@gmail.com

# Attachment C-14

My name is Radhica Kanniganti and I am writing this character reference letter for Mukund Mohan. To give you a brief introduction of myself, I am an environmental professional with a master's degree in environmental engineering and roughly 18 years' experience in the domain areas of environment and sustainability. I have held leadership positions for the Ohio Environmental Protection Agency. More recently, I was with the United States Environmental Protection Agency (US EPA) at Chicago. Currently, I am the engineering lead for green-tech startup, Devic Earth, and advice startups and corporates to help scale innovative environmental technologies.

I have known Mukund for around 28 years now. He was my senior in college and dated my roommate and best friend, Vinita Ananth, whom he went on to marry. The most striking thing about Mukund ever since I have known him is the sunshine he brings in every time he enters the room. He always has something kind or quirky to say to everybody to make them smile – irrespective of their age. He is genuinely empathetic and cares about people. I have seen him extend a helping hand to people without a second thought, sometimes even to complete strangers.

Mukund is a very hard-working person. His ability to think five steps ahead and his commitment to follow through on his ideas has brought him success at a very early age. However, he has always been grounded to his roots and never let success get to his head. He has always maintained a simple lifestyle (using only public transport, not owning a television for most of their lives are some examples), always striving to make a difference. Passionate about sharing his knowledge, Mukund has gone back to his alma mater on several occasions to talk to students about their career paths and share insights from his own journey.

As committed and busy as he has been on the professional front, Mukund is the quintessential family man. A doting son, an affectionate brother, a loving husband and a caring father, I have seen Mukund as he embraced each of these roles with full passion. He gives his all to every relationship – be it family or friends – and has been there through joy or pain with every one of them. I have always been amazed at his ability to connect with people and maintain relationships even through his busy life. Nothing gives him more pleasure than an evening cooking for his family and spending time with them.

While I have not interacted with him on the professional front, the one thing I do know about him is that he has high ideals for himself. It is important for him to live up to his own expectations and values.So when I heard this news from the US, I was shocked because this was not the Mukund I know. That is why I believe that this incident must be an anomaly. I have a very high regard for Mukund's integrity and honesty, which he has demonstrated several times in his life.

I would like to end by saying Mukund is one of the most caring, generous, helpful people I know. A hard-worker, multi-tasker who is passionate about the journey to success than success itself. Grounded in values, his family is the most important thing to him. His altruism and kindness has helped hundreds of people and I hope will continue to do so. While this character reference may not absolve him of his guilt, I sincerely hope that this could be considered as a one-time mistake (albeit a big one) and leniency could be exhibited while administering any sentence.

Thank you for your time and consideration in reading this letter.

Sincerely,
Radhica Kanniganti

# Attachment C-15

I'm Raghuram Madabushi (48), and a cousin of Mukund Mohan's wife, Vinita Ananth. I have known Mukund for 25 years, ever since he got married to my cousin sister. I have an undergraduate degree in computer engineering, a master's in business administration in finance and investments, and am a Kaufmann fellow. I've worked extensively in the technology industry (specifically in semiconductor fabrication, chip design, systems architecture for companies like Texas Instruments, Intel, and Cadence), and as a venture investor in the past decade at companies like SRI (Stanford Research Institute) Ventures, GE (General Electric) Ventures. I am currently an investor at National Grid Partners.

I have personally and professionally interacted with Mukund over several years, when I lived in Seattle. The broad traits that come to fore in both these settings are Mukund's genial and accommodating nature – and his ability to find common ground and help.

Personally, we've been a religiously observant family and Mukund was a constant companion to trips to the temple. The time spent volunteering and praying brought us much more together than I had expected. I was privy to a very kind soul and somebody who genuinely cared for others. I always genuinely looked forward to meeting him over the weekends.

Professionally, I shared many interests with Mukund and hence have sought out his counsel for various technology landscape discussions – where is tech headed, what does the future hold, what industry trends will be interesting down the road and such. But what really moved me, and something I have taken to heart from the interactions I have had with Mukund, was his ability to connect with startup founders and be a partner to them – everything from a coach, to a mentor, to an investor. And he did it with a deep sense of service.

It came as an absolute shocker when I read about what he had done – it genuinely shook the absolute foundation of my perception of who Mukund was as a person – these two personas just were polar opposites. However, with a little bit of introspection, I've reconciled that it hasn't changed who Mukund is at his core: a genuinely caring human being with very little pretense about anything that is not core to who he is (be it wealth, or status, or profession, or education).

I'm sure there are ways in which he is paying for his missteps. The person I know has several admirable human gifts and qualities and I am confident Mukund will continue to contribute positively to society. He has made a significant difference to the lives of several people so far. I request the honorable US court to consider Mukund's contributions and request for leniency in sentencing.

Raghuram Madabushi
Los Altos CA
Dt. Thursday, April 22, 2021

# Attachment C-16

The Honorable John C. Coughenour

United States District Judge

United States Courthouse

700 Stewart St., #16229

Seattle, Washington 98101


Re: United States v. Mukund Mohan, No. CR21-00041JCC


Dear Judge Coughenour:


I have known Mukund as a family friend for over 6 years.  Over the years, not only have our families gotten to know each other, but he and I have gotten to know each other as closer and closer friends.


When I first met Mukund I was intrigued and humbled by his willingness to help and care of people, a trait that actually ran quite deep.  A specific example that really stood out was the fact that he and his wife adopted two girls from an impoverished existence in India (Tara and Richa) from India.  Though Mukund and Vinita already had two very healthy happy kids, Thrisha and Rishab, Mukund still wanted to do what he could to help make a difference to the lives of Tara and Richa.  On Sundays Mukund and I organized a recurring soccer game where the dads and the kids came to play.  He always made it a point to bring these two girls who were just adapting to life in the US – they could barely speak English, but there he was every Sunday encouraging them and just being an amazing father to them.


Since those summers, Mukund and I have remained very close.  He is an athlete and in much better shape than I am, so the only way I can keep up with him is to go on Sunday morning walks with him 2-3 times a month.  During these walks we often find ourselves discussing work, since we are in similar professions (executives at tech companies).  But beyond our talks about work, what we spend much of our time discussing is Mukund's passion for using technology to make the world a bit of a better place.  A recent example that we spoke about was how technology could probably be used to help improve the lives of foster children, inspired by how he has helped Tara and Richa rise out of their lives in India.


When I learned about Mukund's case in the summer of 2020, I immediately reached out to him and was the first friend with whom Mukund discussed his case.  That walk lasted several hours.  Beyond his embarrassment and humiliation, which was understandable, was a level of introspection that was simply humbling.  He was digging deep to really understand why he did what he did, and most importantly

what he needed to do to eliminate the demons inside himself.  During the many walks we have had since, I have witnessed his contrition and repentance first-hand.


Mukund is a kind-hearted, good person who still has much to offer to society.  I am proud to call him my friend.  He gives generously of himself to his wife, his young children, his family, and his friends.  It is my sincere hope and prayer that you will consider all aspects of his character when you render your judgment.


Thank you,



Rakesh Mahajan

Email: rakeshmahajanhome@gmail.com

Mobile: 206-331-9018

**DocuSign**

| Certificate Of Completion | | |
|---|---|---|
| Envelope Id: 5E24C17EB63A465D9BF41F3DFF30252F | | Status: Completed |
| Subject: Signed: Rakesh Letter Mukund.pdf | | |
| Source Envelope: | | |
| Document Pages: 2 | Signatures: 1 | Envelope Originator: |
| Certificate Pages: 1 | Initials: 0 | Rakesh Mahajan |
| AutoNav: Disabled | | 655 Montgomery St Fl 18 |
| EnvelopeId Stamping: Disabled | | San Francisco, CA  94111 |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | rakesh@humaninterest.com |
| | | IP Address: 174.193.198.122 |

| Record Tracking | | |
|---|---|---|
| Status: Original | Holder: Rakesh Mahajan | Location: DocuSign |
|     6/22/2021 8:39:42 AM |     rakesh@humaninterest.com | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Rakesh Mahajan | *Rakesh Mahajan* | Sent: 6/22/2021 8:40:01 AM |
| rakesh@humaninterest.com | FE7A029E4BE84F6... | Viewed: 6/22/2021 8:40:12 AM |
| VP Revenue | | Signed: 6/22/2021 8:40:54 AM |
| Human Interest | | Freeform Signing |
| Security Level: Email, Account Authentication (None) | Signature Adoption: Pre-selected Style | |
| | Using IP Address: 174.193.198.122 | |
| **Electronic Record and Signature Disclosure:** | | |
|    Not Offered via DocuSign | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Rakesh Mahajan | **COPIED** | Sent: 6/22/2021 8:40:55 AM |
| rakeshmahajanhome@gmail.com | | Viewed: 6/22/2021 8:41:36 AM |
| Security Level: Email, Account Authentication (None) | | |
| **Electronic Record and Signature Disclosure:** | | |
|    Not Offered via DocuSign | | |

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 6/22/2021 8:40:01 AM |
| Certified Delivered | Security Checked | 6/22/2021 8:40:12 AM |
| Signing Complete | Security Checked | 6/22/2021 8:40:54 AM |
| Completed | Security Checked | 6/22/2021 8:40:55 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

# Attachment C-17

The Honorable John C. Coughenour                                    June 22, 2021

United States District Judge

United States Courthouse

700 Stewart St., #16229

Seattle, Washington 98101


Re:  United States v. Mukund Mohan, No. CR21-00041JCC

Dear honorable Judge Mr.Coughenour,

Mukund and I know each other and have been friends since 1990. I first met him in our sophomore year in engineering in India and was immediately impressed by this confident and super friendly young lad.

He was by far one of the most popular guys in the college, extremely helpful to everyone around him from students to teachers. It was quite common for him to go out of the way to help someone irrespective of age, gender or situation. We stayed in the same hostel for a couple of years and have seen him be a trusted and go-to guy for a lot of fellow students and friends. He also led many initiatives in the college and hostel, built multiple communities and drove consensus on difficult issues. Mukund has been very helpful to me personally in navigating my college days, guiding me in campus interviews etc. He has done this not just for me but for several others as well.

He moved to the US for his masters and then had a successful career. He has always stayed in touch and is almost always the first to wish on birthdays and other important milestones in my life.  He returned back to India to be with his parents. He was at the peak of his career when he made this decision to return. He had to rebuild his career in a country that was not well known to him professionally. He had a young family by then. He also made a big decision to adopt twin girls. The process can be quite tedious in India and it took several months to complete the adoption. He could not have been faulted if he had given up on the adoption midway but he persisted.

During this period, he also became a very well-known mentor and advisor to many Indian startups. He must have helped over 100 entrepreneurs in their startup journey. Some of them have built large companies and employed 1000s of people. I'm sure all of them have Mukund to thank for in some form or the other for their own success. He did this without any expectation commercially or otherwise. As an investor in some, he gave fair and entrepreneur-friendly terms and changed the mindset of many other investors as well. One of my regrets has been that I have never had the opportunity to work with him.

I truly believe the current incident does not reflect the person he is. He is extremely apologetic, has taken full responsibility and is committed to fixing it. He has been honest about his fault in this event. I do not know of the circumstances that led to this but know for sure this is not what he represents. He has always been fair, treated people with respect, helped not only his friends, family and peers but anyone who has crossed his path without any expectations. I can assure you this is the feeling shared by many of us who know him closely.

He continuous to be a great friend to me and will be helpful to everyone around him irrespective of the outcome of this case. He is a family man with high moral standards.

I would sincerely request a lenient sentence, give him a second chance considering all his contributions so far. He deeply regrets his actions and is working very hard to reconstruct his life. I for one, like many others continue to hold him high regard and will not hesitate to engage in any business activity with him going forward.

Thank you for your consideration.

Satish Mugulavalli

satish.mugulavalli@gmail.com

# Attachment C-18

*United States v. Mukund Mohan*
No. **CR21-041JCC**

My name is Radhika Mukhija and I am writing this character reference for my erstwhile neighbor (during his stay in Bangalore, India) who later grew to win our hearts with the simplicity of his persona, and the magnitude of his heart.

Not only was he witty and intelligent, but also dependable. Mukund was an affable and loving personality. He was humble despite his success, simple in his living and warm in his conversations.

We always knew Mukund to have a great sense of humor with his peers, respectable towards the elderly and a great guide and mentor to the youth. He was always willing to help anyone and everyone who reached out to him.

Mukund and Vinita made a perfectly happy family- and at that point of time (2009-2011) had two bright, beautiful kids - a son and a daughter who coincidentally went to the same neighboring school as most of our kids. I still remember what an indulgent parent Mukund was, actively participating in the kids' academics or co-curricular activities. Both Mukund and Vinita ran busy schedules yet never compromised on being good parents or perfect neighbors.

I clearly recall that whilst they made a perfectly happy and a complete family, one day they informed us that they were growing their family- they were adopting two beautiful little orphaned baby girls.

We were all pleasantly surprised but wondered why? Over a casual conversation, when we questioned them over their certainty of this big a decision and the life-long commitment and responsibility that would come to them with it, they told us that this is something Mukund and Vinita had always wanted to do- it had always been their desire to give a homeless and orphaned baby girl a shelter, good life, a promising future and the nurturing love and care of parents. We were completely in awe and asked that one was understandable but why two as it was going to be a lot! To that we were informed that the girls were twins and they did not want to part the siblings away from each other. How does one react to that? Respect, respect and yet more respect!

India is a beautiful country but unfortunately battles poverty and therefore the associated social evils that come with it- somewhere in the lower strata there is lack of education - the male child is prioritized over the female- it is the girl child who often faces the backlash and is left to deal with her fate. We are all aware of the fact that in today's time and age, when both spouses work, life can be busy and resources limited: and here I mean not only financial but also more importantly, emotional and mental- but despite the odds, and despite a perfectly blessed and a complete family( a son and a daughter) Mukund had the courage and desire to adopt two baby girls - goes to say a lot about the character of this person.

The little girls came into Mukund's life and their family grew from two to four kids. There were challenges the couple faced - they wanted to give the two younger daughters the same social status, education and life as the older kids- but realized the girls could only speak their native language- they knew not a word of English (and English was required be it for a school admission here in India or later for their move to the US) and also of course they were somewhat raw, thereby different in their mannerisms to the other older two biological kids. I remember the efforts they put in to groom the girls and make them absolute equals to their other kids. They left no stones unturned to empower these two little girls and make them their own- such people are rare and few!

Honestly, I am yet to find another couple in my life who have that big a heart and the courage to take that leap of faith, or the confidence in themselves to do it that fair and square. Today the kind of life that Mukund and Vinita have given to the two girls is a pure selfless karma not many of us can take credit for. Mukund to us was always known to be an honest, simple, hardworking family man with a heart of gold- he may have made a gross mistake but he has also done a lot of good not many can boast of. He has been a dutiful father, son, husband, and a great neighbor.

I will close my letter to you with a plea- " to err is human- to forgive divine! I am hopeful that Mukund would have learned his lesson and that the honorable US courts will grant him leniency in his sentencing.

I thank you for the opportunity to share my thoughts.

Regards,
Radhika Mukhija

# Attachment C-19

DocuSign Envelope ID: 9D01CAC8-32D1-4C88-AF32-A409D73F3FF8

The Honorable John C. Coughenour
United States District Judge
United States Courthouse
700 Stewart St., #16229
Seattle, Washington 98101

Re: United States v. Mukund Mohan, No. CR21-00041JCC

Dear Judge Coughenour,

My name is Godwin Pavamani and I have known Mukund Mohan for the last 3 yrs. Our relationship started as two strangers who started together in the spring of 2018 as colleagues at BuildDirect.com in Vancouver BC. While we quickly built a strong partnership at work, little did I know that our time together would be the foundation of a strong friendship that has extended even to our families. I have known Mukund to be a compassionate, high energy and fun-loving family man. He brings joy into every room that he enters, is fiercely loyal, passionate about seeing others develop and succeed, and always generous with his time and resources. Not once in any of our professional or personal interactions did I question his judgement or intentions and Mukund has always acted with the highest integrity. Particularly, I envied his knack for being direct and honest with everyone, while doing so with utmost grace and professionalism.

Needless to say, Mukund became a trusted friend and I seek his advice and perspective as a mentor even to this day. At the end of 2019 I relocated my family back to Seattle as part of expense reduction at our company, and Mukund became a constant source of support (like a close older sibling would be) in a very challenging time in my life. This next period in our relationship really underscored his principled character and friendship. He took it upon himself with urgency to open his network for me, connecting me with people from all walks of life who later became instrumental in presenting new opportunities to explore. When I was down and defeated, he called me every day to encourage me and keep me focused on battling through the challenges of today to see the possibilities of tomorrow. When I decided to pursue entrepreneurship, Mukund spent several hours every week (for months) helping shape my idea, giving me advice from his own experiences as a founder and activating his network through which I met my co-founder and 50+ potential investors - all of which I would have struggled through if I didn't know him. In meeting this extended group, I also saw how widely respected/loved he was, because of his genuine desire to help others in their journeys without expecting anything in return, his ability as a master connector and his tremendous business/technical acumen that resulted in sought after, actionable advice. A true mark of a leader is when others want to model their best attributes and I saw it through how all these connections willingly wanted to pay it forward.

The events of summer 2020 came as a shock to me and I know it was a serious error in judgement. While I was heartbroken and unsure of how to react, I decided to stand by my friend in his time of trouble, listen and help him process the challenges ahead of him - all things he did for me just a few months prior. It's been almost a year and we continue to meet weekly to connect and mostly give Mukund an opportunity to share what he is learning through this time of reflection. Through this I can tell that Mukund has a genuine and contrite spirit over his wrongdoing, while openly seeking repentance from family, friends and broader society. As a devout Christian, I firmly believe in repentance and forgiveness because we all are flawed. This verse from 2 Corinthians 7:9 reflects what I sense in him currently." ...Yet now I am happy, not because you were made sorry, but because your sorrow led you to repentance. For you became sorrowful as God intended and so were not harmed........"

Mukund is a genuinely good person with a tremendous amount left to positively contribute to our society and the world at large. I hope you will judge him on the totality of his character and impact, and consider minimizing the sentencing effect on his life, especially to his role as father to his young children.

I trust you will take this letter into consideration as you determine a just resolution.

Thank you.
Godwin Pavamani
Email: gpavamani@gmail.com
Phone: 425-598-6621

DocuSigned by:

*Godwin Pavamani*
289C876190734A4...
6/29/2021

# Attachment C-20

The Honorable John C. Coughenour
United States District Judge
United States Courthouse
700 Stewart St., #16229
Seattle, Washington 98101

Re:  United States v. Mukund Mohan, No. CR21-00041JCC

Dear Judge Coughenour,

My name is Amaresh Ramaswamy and I have known Mukund Mohan for over nine years since 2012 when I was the Director of Finance for Microsoft India. I was first introduced to Mukund by a company founder at a startup event and I was immediately drawn by his energy and selfless Giving in coaching and mentoring others. Speaking to multiple industry leaders, investors and entrepreneurs, I realized the unparalleled respect, reputation and affection that everyone had for Mukund, and hired him to build and lead the Microsoft Startup Accelerator in India in 2012. He was an outstanding leader, going on to coach and inspire tens of young companies and so many of them owe their very existence and success to him. Mukund was also a great motivator for all of us on the Microsoft leadership team, guiding us to think big, innovate and help others in the technology ecosystem become successful.

Mukund has since become a great friend, a good sounding board and a wise counsel for me on so many fronts. I have reached out to him so many times over the years when faced with a difficult decision at work, an investment decision or a career choice. He has always been available to listen and is always generous with his time to guide me through any situation, with no expectation of anything in return. He can see the good in people and help them bring their best to work. He is always open and honest in his feedback, empathetic and humble in his approach and I have always enjoyed working and interacting with him.

Over the years, I have come to know his family and children well, and I respect Mukund as an adoring and supportive father that always puts his family first and is greatly loved by them. Whether playing tennis with his son or chaperoning his younger daughters to dance lessons or coaching his elder daughter in computer programming, I have always known Mukund to be a caring, passionate, dependable and responsible parent often sought out for advice by other parents.

I was shocked by the events of summer 2020 and understand the circumstances of the issue. While I do not condone the behavior, I also do not believe they reflect Mukund's entire work and personal history and his true character. Over the years he has been infinitely generous with his time and intellect with me and I have closely observed him helping my colleagues and other industry leaders. So many look up to him as a role model and I still believe he has a lot to offer to help others. I can say with total confidence that few have contributed to society and the success of others in a way that Mukund has. I find Mukund now deeply reflective and digging deep to understand what motivated him to go down a path that does not reflect his true nature and is re-committing to his family and helping others.

Mukund is a good person and a true friend and I am always happy to recommend him as a mentor, and pray that he be given a fair judgement that also considers the immeasurable good that he has done and all the lives he has positively impacted, so he can put his own life and family back together. I am confident he will continue to help others and make a big difference in people's lives with all his care, energy, enthusiasm and knowledge.

I would sincerely request you to take this character letter into consideration as you make a fair decision. Thank You.

Sincerely,

Amaresh Narayan Ramaswamy
Email: amareshr@live.com
Tel. +91.7829400100

# Attachment C-21

*United States v. Mukund Mohan*
No. CR21-041JCC

To

The Honorable John C. Coughenour

United States District Judge

United States Courthouse

700 Stewart St., #16229, Seattle, Washington 98101

Re: United States v. Mukund Mohan, No. CR21-00041JCC

Dear Judge Coughenour:

I have known Mukund since 2016 after we moved into Yarrow Point, WA neighborhood. We met through our kids; both of our kids share a passion for sports, especially cricket and football. I also coached the kids cricket team for 2 years. Mukund and I drove to several cricket games together in the Greater Seattle area. Also, we traveled to California together on a couple of trips, as a coach and parent guardian for the kids cricket team.

During this time, I have had the opportunity to observe, and interact with Mukund. I found him to be a committed parent. He was always available to help all kids, not just his own, be it throwing balls, cheering them on the sidelines, giving them a pep-talk, running errands, scouting/planning for practices and game, lifting the energy or whatever was required. It was clear that Mukund was the confidant "uncle" to the kids on the field and he lifted everyone's energy on and off the field with his positivity and brought the club together with a joyous spirit.

While my association with Mukund has only been for 5 years, I have found him to be a loving and caring person. He has been at hand to help me in various ways and I have noticed that he has done so for many of our friends as well. I have talked to him a few times since the summer of 2020 and believe he has deeply introspected his actions, re-discovered his moral compass and is profusely apologetic that his actions have let many people down, in addition to breaking the law. If given a second chance, I do believe Mukund will be a good citizen once again and make a positive impact to the society. He has a lot to offer to the communities he is involved in and across many dimensions.

Regards

Bhargava Vadapalli.

9211 NE 40th ST, YARROW POINT, WA 98004

# Attachment C-22

*United States v. Mukund Mohan*
No. **CR21-041JCC**

Arun Vaidyanath
7066 Avenida Rotella
San Jose, CA 95139
March 29, 2021

The Honorable John C. Coughenour
United States District Judge
United States Courthouse
700 Stewart St., #16229
Seattle, Washington 98101

Re: United States v. Mukund Mohan, No. CR21-00041JCC

Dear Judge Coughenour:

Please accept my kind greetings. I am writing this letter as a reference for Mukund Mohan. Mukund is a very close friend who I have known for over 25 years. I met Mukund in 1996 – I moved to California and reacquainted with a family friend who introduced him to me.

In a nutshell, I consider Mukund an ethical, sincere and helpful individual with whom I have share cherished memories, turn to for advice, had babysit my son and trust implicitly. I also have little doubt that my feelings are not unique and you will receive similar confirmation from others who love Mukund and are concerned about his well-being and future.

I would describe Mukund as a person with deep convictions and someone who passionately follows his beliefs. Knowing Mukund and his family for a long time, I know his personal values and beliefs come from strong morals influenced and imbued into him by his parents and family. It is with this value system that Mukund jumps in whole-heartedly to help anyone in need. I can cite several examples here but Mukund has come through for me and my family repeatedly – on many occasions initiating the offer himself. During the occasion of a family death anniversary, Mukund offered to help and took time off from work to play an important role as part of the ceremony. Beyond this extremely personal gesture, Mukund has advised us on many occasions, using his experience to help navigate complex choices.

On the professional front, Mukund has always stretched himself to learn and grow and this is evident in his rapid growth and broad entrepreneurial experience. He has a tremendous network building capability and this again comes from his genuine approach of making real connections. I recall during my son's coming of age ceremony, Mukund and his lovely wife, Vinita made a one-day trip all the way to California to be part of the special occasion.

The Honorable John C. Coughenour
March 29, 2021
Page 2

Given what I know and believe, the news of this criminal charge truly surprised me. I have spoken to Mukund on multiple occasions and understand that he too is at a loss on how to explain this. He is truly repentant on the damage this has caused and it is evident that Mukund regrets the harm he has put on the people hurt by his actions. Consequently, he has immersed himself into what he does best – faith in God and serving his community.

Certainly, Mukund has made some mistakes, which I know he deeply regrets having committed, and for which he will make full reparations. Everyone deserves a second chance and with your judgement, the justice system can give Mukund a new opportunity. I am certain that Mukund will fully avail of this to atone for his misdeed.

Sincerely,

Arun Vaidyanath

# Attachment C-23

*United States v. Mukund Mohan*
No. CR21-041JCC

The Honorable John C. Coughenour
United States District Judge
United States Courthouse
700 Stewart St., #16229
Seattle, Washington 98101

Re:  United States v. Mukund Mohan, No. CR21-00041JCC

Dear Judge Coughenour,

I am Arthi Vijayaraghavan, Mr.Mukund Mohan's cousin. I have known Mukund all my life as a caring older brother. Growing up, we lived in the same city for a period of time, visited each other during holidays, and spent time together visiting our family's native village in South India. Even though I do not have a brother (born to my parents), I never felt the need for one as Mukund was always there for both me and my sister.

As a kid he was a typical playful brother playing pranks on us and enjoying a nice time with family. He was a role model for me in spoken English as he had much more exposure than me, and academic excellence. From a young age one of the most important qualities which has always stood out for me is his genuine affection for people and honest concern about the things affecting their life.

In India, when he was growing up his family had household help. They were Prakash the errand boy, Mallika the cook and house maid. I have seen his interactions with them up close. They were considered as family and Mukund always ensured he set a very good example to us kids on how to treat everyone around with respect and dignity. He was also helpful to them and supported them in various hardships they faced in their lives. He never differentiated people based on their status, he treated them the same irrespective of their station in life.

During my middle school years, he went away to study engineering and was very focused in shaping his career. His choice of colleges and field of study was a big influence in my own academic decisions as well. As I was finishing up high school, he was very proud of my academic achievements, and motivated me to go to a top ranked school in India. He guided me in my course choices as well. This is not just my experience, but that of all of us younger cousins in our family. He was always there guiding and influencing our decisions in various aspects of our life. From him all of us learnt the value of hard work and being honest in our efforts.

I was finishing up my engineering studies in India, when he left for the United States to pursue his education. As has been the case with most of my life journey I followed him to the United

States as well for my own higher education. During the first year of my Master's he helped me financially for my course work. When I stayed at his house during my first winter vacation, I could understand the hard work, and dedication with which he had built a life for himself in this country. He had finished his Master's with amazing research work, worked in top companies and also launched his own venture in a short period of time. In spite of all this success he is a very simple man, who is never flashy or shows off his success. He always approached everyone with an attitude of how I can help you and what can I learn from you.

He has mentored a lot of people in his life. He has extended his support for educational needs through financial assistance and guidance. Mentored individuals and startups in the best possible way, always setting them up for success. Despite his busy schedule he has always been a very loving son, brother, father and friend to many of us.

Apart from being a role model in his profession he and his wife Vinita have created a loving family. His house has always been welcoming and supportive to all of us. He has raised amazing kids, who are kind and purpose driven in their lives. I believe your true values and beliefs are reflected in the way you raise your kids as they are the closest to you. All four of his kids have imbibed the qualities of hard work, honesty and genuine care for people from their parents.

Regarding the current situation, when I learnt about the incident from him it was very shocking. He was extremely remorseful and was genuinely upset. This incident has made him introspect his actions and I am sure that this will be the single low point in his life. He will learn from this incident and make amends appropriately. I request you to consider our family's request and give him another chance. He will always be my affectionate brother guiding me through life's ups and downs.

Thanks,

Arthi Vijayaraghavan
Email: arthi.prashanth@gmail.com
Phone: 312 752 7044
Date : June 21, 2021.

# **<u>EXHIBIT D</u>**

# HOW TO DEAL WITH STARTUP FAILURE. A PERSONAL STORY

JUNE 9, 2012  MUKUND MOHAN  38 COMMENTS

I have failed in as many startups as I have been successful.

Since I tend to tinker a lot, I have also failed at many of my side projects. In fact I have the distinction of not having succeeded in any of my side projects in the last 4 years (4 side projects).

If however, you count the lessons learned, I have been enriched.

The first project was an idea that was going to provide "price transparency". The site was registered as pricearoo.com. I had a team of 2 build it, got a prototype ready, did a lot of leg work to understand the products the site should give your pricing information about. But I never launched it. I realized that building stuff is rather easy, but I feared it was too small a feature for people to take notice. 6 months later Priceonomics was launched. I am not privy to how they are doing but its a good start.

Ship early. Your product will have a lot of bugs. Ship early. It wont be perfect. Just ship the product. You will feel miserable about the fact that its not "quite ready". Ship it already. Get people to use it or at least give you feedback. Ship.

I also failed at an eCommerce company. Technically it is still going, but I was a miserable failure at it. I just was not prepared for the rough and tumble of both managing real "inventory" or lots of blue collar suppliers. I hired too quick, did not manage expectations well, and had negotiated a very poor deal with the investors. The capitalization table was so messed up, that no new investor was willing to fork up money for the company. There were way too many lessons I learned but the most important was work with people you like and trust.

These are recent (last 1 year). Let me tell you about my first failure.

I left Univ of Maryland, (Baltimore County) in 1994 to head to California for a startup. Fresh out of college, I was not quite a rockstar programmer that I thought I was. The first project required me to get up to speed on a language (Visual C++) that I was unfamiliar with and a functional area (procurement) which I did not comprehend. 4 months into a "delivered" prototype, the client kicked us out. The entire project had to be rewritten because we built a very buggy prototype. The company failed. I was not even sure what I learned at that point. Except maybe I needed more experience and I needed to be a better developer. That experience colored my judgment on services companies though. I never wanted to build a consulting company after that.

For all the young, newly minted graduates who are going down the entrepreneurial journey – Celebrate your first failure. Take your friends out for a lunch or drinks. Share what you learned. After that dinner / lunch forget about that failure but write down what you learned. Email it to yourself but leave it unread. Archive it. Open it after 2 years. If you dont laugh at that email you sent to yourself, I will send you a free t-shirt. Get a job at a startup where you can learn from someone else making mistakes.

If I could tell you one thing I wish I knew now that I did not know when I failed at those things, it would be: I am happier I failed. Not when I failed, but much later. I felt awful after each failure, but moved on.

Nobody cares that you failed. Except you.

Think about the last time anyone at an interview asked you if you got an F in school.

# EXHIBIT E

**KAMAN CONSULTING, LLC**
Lonnie Kaman, MA, LMHC
22722 29th DR. SE Suite 100
Bothell, WA  98021
206-719-5658

July 11, 2021

Robert Westinghouse
Via email: rwestinghouse@yarmuth.com

RE:  Mohan, Mukund Assessment

Dear Mr. Westinghouse,

At your request, I began working with Mukund Mohan on May 11, 2021, and have seen him weekly since that date.  We have met a total of 8 times to date.  We have been doing Cognitive Behavioral Therapy in our sessions together.  It is my understanding that Mr. Mohan is scheduled for sentencing before the Honorable John C. Coughenour, later this month.

Mr. Mohan has been honest and forthcoming with me during our sessions.  He has sincerely indicated a desire to understand his motivation for committing the alleged offense.
Mr. Mohan has shown a deep regret for his actions and has been tearful throughout many of our sessions.  He disclosed to me that he cries everyday about what he has done.  He has stated many times that he can't believe he crossed this moral boundary and will work hard the rest of his life to gain back the respect of his wife and children, friends and colleagues.

I believe Mr. Mohan takes this situation very seriously and is extremely remorseful for his poor decision making resulting in the instant offense.  He stated he wants to continue mental health treatment to better understand himself and to make sure this never happens again. It is my professional opinion that with continued mental health treatment, Mukund Mohan has a low risk of reoffending and poses no danger to the community.

Respectfully submitted,

Lonnie Kaman, MA, LMHC

# **EXHIBIT F**

© 2021 Mukund Mohan Copyright.  Esports Entertainment Group $GMBL  Page 1

| **Company Brief:** Esports Entertainment Group ($GMBL) | **The Opportunity** |
|---|---|

**Company Brief:** Esports Entertainment Group ($GMBL)
$15.49, **Range**: ($2.04 52WL -$20.74 52WH)
12.7MM **Shares outstanding** 7.34MM Float.
**Market Cap:** $226M

| Year | Revenue | Growth | Notes |
|---|---|---|---|
| 2021 | $18MM | N/A – previous rev negligible | Was $15MM in Oct |
| 2022 (E) | $70MM | 288% | Was $42MM in Jan |
| 2023 (E) | $156M | 112% | Was $72M in Jan |

**The Opportunity**

EEG enables **gambling on eSports**. This is a market growing from $750M in 2020 to **$3.5B in 2025** – sub segment of overall gambling. 20 states in US allow it already and rest are joining.
With Malta based license this is a GLOBAL opportunity giving EEG **150 jurisdiction opportunity** – **not just US**. eSports are played by 425MM young, 18–28-year-old gamers.
This market is very new and growing. Gamers are thrilled with the new Sony PS and Microsoft XBOX and sharing their games on Twitch or YouTube.
The large Esports networks are partnering with EEG to create gambling opportunities.

**Risks**

1 The big players like Draftkings or FanDuel could get into this, but the opportunity to be partnered with specific games and platforms is unique.
2 Smaller competitors are Boom fantasy, Stars Draft and Draft Day but EEG is the early mover.
3 The stock has run up a lot from $4 in Oct 2020 and could take time to consolidate

**Short term catalysts**

A) Closed $30MM in funding Feb 15th to further acquire and grow business
B) Raised guidance for 2022 with acquisitions from $42MM to $70MM
C) New Jersey license approval in Spring – March / April
D) Raising guidance to 1.7X guidance given in Jan
E) Dec resigned agreements with existing partners
F) Multiyear agreement with Philadelphia Eagles, LA Kings. LA Galaxy, Signed Baltimore Ravens as well last week.

**Comparable**

| Stock | M Cap | NTM P/S | Notes |
|---|---|---|---|
| DKNG | $22B | 44X | HIGH |
| FUBO | $2.7B | 12X | Rev from streaming |
| **GMBL** | **$223M** | **3.1X** | **LOW** |
| GNOG | $1.16B | 12.8X | |

**Expected Stock Price**

| Multiple | Stock Price | Likelihood |
|---|---|---|
| 3X (Current) | $15.7 | |
| 4X | $19.7 | |
| 6X | $29.5 | **Most Likely** |
| 8X | $39.7 | |
| 12X | $60.1 | |

1  News:

2  With Helix eSports, GMBL acquires: 1) five esports centers, including two of the largest in the US; 2) Genji, a best-in-class esports analytics platform, and 3) LANdual, a
3  proprietary player-vs-player wagering platform that enables skill-based wagering on third-party video games both in gaming centers and eventually remotely.
4  LANdual has relationships with most major game publishers and a pilot program underway with the New Jersey Dept. of Gaming Enforcement

5  GMBL increased guidance for FY22 revenues by 68% to $42 million. We increase our FY21 revenue estimate by 15% to $15 million and our price target by 14% to $8,
6  which assigns a six-times multiple to FY:21 projected revenues.

7  It again raised guidance to $70M today Feb 16th.

8  The company added UK and Irish gambling licenses through a July acquisition and acquired its first US license in August through a partnership with a New Jersey
9  casino operator. Launch in April.

10  Esports Entertainment has nearly $42 million of cash to fund acquisitions, platform development and tournament hosting. Management is guiding for FY:21 revenues
11  of $18 million up from $13M.

12  Overview

13  EEG is an eSports company. has acquired multiple businesses over the last year to drive growth and has gone from 15 employees to over 150 in 8 months. They have
14  acquired business to boost their topline to $70+M in 2022 from previous guidance of $42M.

15  There are 3 parts to the business. **Esports entertainment** (setting up leagues, providing software to manage leagues, etc.), **Skill based wagering** like $SKLZ and
16  **gambling** like $DKNG.

17